THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JAMES MILLER, Defendant-Appellee.

First District (2nd Division)   No. 82—1902

Opinion filed June 5, 1984.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Jeanette Sublett, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, of State Appellate Defender's Office, and Steven J. Goldberg, of Winston & Strawn, both of Chicago, for appellee.

JUSTICE DOWNING delivered the opinion of the court:
Defendant, James Miller, was charged with knowingly and unlaw-

fully possessing a controlled substance, cocaine (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(a)). His motion to suppress evidence was denied. Thereafter, defendant filed a motion for rehearing based upon a newly decided appellate court decision. A second trial judge sustained defendant's motion to suppress. The State now appeals from this second order (87 Ill. 2d R. 604(a)(1)) and questions whether (1) collateral estoppel barred the reopening of defendant's motion to suppress, and (2) the trial court erred in ordering the suppression of the evidence.

On February 9, 1981, defendant was arrested and later charged by information with possession of a controlled substance, approximately 170 grams of cocaine. A hearing was held on defendant's motion to suppress before the Honorable Adam Stillo, a judge of the circuit court of Cook County.

Defendant called as his first witness William J. McNamara, special agent with the United States Justice Department, Drug Enforcement Administration (DEA). The agent testified he was at O'Hare Airport at approximately noon on February 9, 1981, investigating the transportation of narcotics, especially cocaine, from Fort Lauderdale, Florida, to Chicago. He observed defendant deplane from a flight originating in Fort Lauderdale. Defendant's blue jeans were tucked into his boots and he carried a brown leather bag over his shoulder. He entered the terminal, looked back and forth three or four times, made eye contact with McNamara, and walked slowly down the concourse to the main terminal area. After approaching an escalator, he stopped, turned completely around and surveyed the area. He then walked to the other end of the terminal and took an escalator down to the luggage area. Once at the baggage claim area, he again turned and looked around and then walked quickly towards two sets of automatic glass exit doors.

As defendant was leaving the first set of doors, McNamara walked alongside of him, said that he was a Federal narcotics agent and asked defendant if he could speak with him. Defendant responded, "Okay." Agent McNamara explained that he stopped defendant based upon a drug courier profile, which includes circumstances such as arrival from a source city (a point from which narcotics are being shipped), the person's clothing, demeanor and personal characteristics, as well as their specific actions while being observed.

When McNamara asked to see his identification and airline tickets, defendant became nervous and started shaking. After retrieving the tickets from his pocket, defendant dropped them, picked them up and handed them to McNamara. The tickets indicated that defendant had taken a flight the previous day from O'Hare to Fort Lauderdale.

Defendant did not respond after McNamara asked him why he had gone to Fort Lauderdale, but asked the agent why he was talking to him. McNamara answered that he was investigating the transportation of narcotics between Fort Lauderdale and Chicago. He then inquired whether defendant had any narcotics on him and if he could look in his bag. McNamara claimed that he informed defendant that he did not have to consent if he did not want to. All that was contained in the bag was a change of underwear and a shaving kit.

McNamara then asked defendant if he had any contraband on his person, specifically in his boots, again informing him that he did not have to allow the agent to look in his boots. Defendant allegedly responded that he did not mind, then removed his right boot, which was empty. After McNamara asked to look in defendant's left boot, defendant leaned over, pointed to the back of the boot and said, "The package is in there." A package containing white powder fell out of defendant's boot, whereupon McNamara arrested defendant. The agent testified that during the encounter he was dressed casually and although he was armed, his service revolver was not in view. The agent stated that he never touched defendant and only spoke in conversational tones.

Defendant's version of the events differed substantially. He stated that after Agent McNamara identified himself, he said, "We have reason to believe that a person that's fitting your description had just gotten off a plane from Florida carrying narcotics." After defendant gave the agent his ticket and driver's license, the agent searched defendant's bag, which defendant did not open for him. McNamara then conducted a pat search of defendant, including his boots. At no time did the agent tell defendant that he was free to leave. After struggling with something inside defendant's boot, the agent ordered defendant to remove his boot, not telling him he could refuse.

Judge Stillo stated that in his opinion, there was no seizure of defendant, that the intrusion was minimal, if any, and that the intrusion was dissipated by defendant's consent and voluntary admission. For these reasons, the court denied defendant's motion to suppress on October 19, 1981.

Thereafter, defendant filed a motion for rehearing based upon the Illinois appellate court decision of February 1, 1982, *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, *appeal denied* (1982), 91 Ill. 2d 561. At that time, Judge Stillo was no longer in the criminal division and declined to retain the case. It was then assigned the Honorable Lawrence A. Passerella, who stated he had read the transcript of the hearing before Judge Stillo and that the initial issue to be ad-

dressed was whether there was probable cause to stop defendant before the issues of consent or involuntariness of the admission arise. The court concluded that it could not state, as a matter of law, that defendant's consent was voluntary and that the facts in this case did not give rise to an articulable, reasonable suspicion of criminal activity. The court therefore sustained defendant's motion to suppress, and the appeal by the State followed.

I

■ Initially, the State argues that collateral estoppel barred the reopening of defendant's motion to suppress which had been denied by a previous judge. "It is well established in Illinois that a defendant may not repeatedly relitigate a pretrial motion to suppress." (*People v. Colletti* (1978), 61 Ill. App. 3d 289, 291, 377 N.E.2d 1276.) Our legislature has reflected this attitude by amending the procedure for a motion to suppress. (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(d);[1] *People v. Douglas* (1981), 100 Ill. App. 3d 181, 182, 426 N.E.2d 950, *appeal denied* (1982), 88 Ill. 2d 552.) Only if there is additional evidence or peculiar circumstances warranting a reconsideration will the court grant such a request. (*People v. Armstrong* (1973), 56 Ill. 2d 159, 161, 306 N.E.2d 14.) Further, it is not sufficient that the defense has discovered a new argument. *People v. Attaway* (1976), 41 Ill. App. 3d 837, 850, 354 N.E.2d 448, *appeal denied* (1976), 64 Ill. 2d 596.

During argument regarding whether the doctrine of collateral estoppel barred defendant from reopening his motion to suppress, Judge Passerella stated that "if there is some exceptional circumstance such as a change in the law which is brought to the attention of the court the court may re-open." He went on to state that the *DeLisle* case established a new concept of law because it offered an additional factor not previously considered in determining whether probable cause exists to stop a person, an issue which Judge Passerella felt was of paramount importance in defendant's case.

The *DeLisle* court held that the facts of the case which formed the basis of the arresting officer's suspicion were not sufficient to justify a stop of the defendant. The court rejected the State's argument that because defendant exhibited conduct which conformed to a drug

---

[1]Public Act 76—1096, sec. 1, effective August 28, 1969, deleted the following words from the end of section 114—12(d): " 'and the motion may be renewed if the trial takes place before a judge other than the one who heard the motion.' " (Ill. Ann. Stat., ch. 38, par. 114—12, Historical Note, at 474-75 (Smith-Hurd 1977).) Section 114—12(d) currently provides: "The motion shall be made only before a court with jurisdiction to try the offense."

courier profile, an investigatory stop was warranted. (*People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299-300, 432 N.E.2d 954.) The court also did not agree with the State that a seizure of defendant had not occurred, and declined to follow *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, where under similar circumstances involving an airport stop, only two Supreme Court justices held there was no seizure. *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 300, 432 N.E.2d 954.

In this case, we do not approve Judge Passerella's decision to review another circuit court judge's ruling on a motion to suppress which was founded upon an appellate court case that allegedly established a change of law. However, we need not determine the propriety of the judge's grant of a rehearing in view of the current status of case law.

## II

In a recent decision, *People v. Brett* (1984), 122 Ill. App. 3d 191, 195-96, 460 N.E.2d 876, this court declined to follow *DeLisle* because of the subsequent United States Supreme Court case of *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319. In *Royer*, the court found that the facts known to the Florida officers at the time they stopped the defendant, facts which matched a drug courier profile, were sufficient to warrant an investigative detention. (460 U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326.) The court stated that "had Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him." (460 U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326.) Because "[w]hat had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in a police interrogation room," the stop was no longer permissible under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and its progeny. 460 U.S. 491, 503, 75 L. Ed. 2d 229, 240, 103 S. Ct. 1319, 1327.

In the case at hand, the encounter between defendant and Agent McNamara never exceeded the permissible level of "a consensual inquiry in a public place." Although defendant characterizes the scene where the encounter took place as a "closed" vestibule, it was in fact an enclosed glass area, clearly visible and open to the public, through which the public exited the terminal. Only one agent talked with defendant, there was no indication that defendant was restrained, and the agent told him that he did not have to consent to a search. This type of statement is consistent with defendant's freedom

to leave. (*People v. Brett* (1984), 122 Ill. App. 3d 191, 196, 460 N.E.2d 876; contrast *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, where the defendant's exit was blocked by government agents.) We cannot conclude that the circumstances amounted to such a display of official authority that " 'a reasonable person would have believed he was not free to leave.' " *Florida v. Royer* (1983), 460 U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326.

In addition, Judge Stillo, who observed the witnesses first-hand concluded that defendant voluntarily consented to the search and that his admission was given of his free will. Although Judge Passerella, after reviewing the transcript, disagreed with this conclusion, we believe that the first trial judge, "having heard the testimony of witnesses *ab initio*, and having observed their demeanor while testifying, was in the best position to determine wherein the truth lay, rather than the subsequent court simply reading from a cold transcript." *People v. Nelson* (1981), 97 Ill. App. 3d 964, 968, 423 N.E.2d 1147.

■ Based upon the above reasoning, we conclude that the consensual investigatory detention of defendant did not amount to a seizure invoking fourth amendment protection, and thus defendant's motion to suppress was erroneously granted by the second trial judge. See *People v. Long* (1983), 99 Ill. 2d 219, 229-30, 457 N.E.2d 1252, where our supreme court recently discussed what constitutes a "seizure" of persons.

For the reasons expressed herein, the June 28, 1982, judgment of the circuit court of Cook County is hereby reversed, and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

STAMOS and PERLIN, JJ., concur.