161 Ill. App.3d 815 (1987)
515 N.E.2d 312
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
PEDRO LEBRON, Defendant-Appellant.
No. 85-3280.
Illinois Appellate Court  First District (5th Division).
Opinion filed September 25, 1987.
*816 Paul P. Biebel, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.
Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Jeanne A. Morrow, Assistant State's Attorneys, of counsel), for the People.
Judgment affirmed.
JUSTICE LORENZ delivered the opinion of the court:
Defendant, Pedro Lebron, and his codefendant, Miguel Martinez[1], were charged with possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1985, ch. 56 1/2, par. 1401(a)(2)). They filed motions to quash their arrest and to suppress evidence seized which were denied after an evidentiary hearing. Following a bench trial, defendant was convicted as charged and sentenced to seven years' incarceration. On appeal he urges the following: (1) the trial court erred in denying defendant's motion to suppress evidence because the arresting police officers lacked a reasonable articulable suspicion to justify his detention; (2) the trial court erred in denying *817 defendant's motion to quash arrest and suppress evidence because there was no probable cause; and (3) his conviction for possession of a controlled substance must be reversed because the State failed to prove he had knowledge of the contents of the tote bag that he had handed to a fellow passenger also departing a Florida flight.
We affirm.
The following facts were adduced at the hearing of defendant's motion to quash the arrest and suppress the evidence. On September 26, 1984, Officer Rosemary Burzinski, who was detailed to the Drug Enforcement Administration (DEA) Chicago Police Department Task Force, and Special Agent Mike Werico were on duty at O'Hare International Airport. Officer Burzinski had had this assignment for approximately five years. At 3:30 p.m. on this date, the officers were conducting surveillance at Gate D-9A, where a nonstop Eastern Airlines flight was arriving from Miami.
Officer Burzinski first saw defendant Lebron when he left the flight with a brown shoulder bag and an off-white tote bag. Shortly thereafter defendant Martinez and Joyce Lozada also got off the plane. After about a minute, defendant Martinez walked up to Lebron, Lebron handed Martinez the white bag and Lebron proceeded alone down the concourse. Martinez then proceeded to walk down the concourse with Lozada, about 10 to 30 feet behind Lebron. During this 5- to 10-minute walk, Officer Burzinski testified that she saw Lebron turn and look behind him three times. She also observed that every time Lebron looked back, Martinez and Lozada parted, and then when he looked forward, they came together.
When Lebron reached the main terminal he went into the bathroom. Officer Burzinski then met and had a brief conversation with Officer Fulkerson of the DEA. While Burzinski continued surveillance of Martinez and Lozada, Fulkerson waited outside the men's room for Lebron. When Lebron left the men's room, Fulkerson followed him.
At this time Martinez and Lozada consented to Burzinski's search of their luggage. In the bottom of the white bag, the officer felt a hard object wrapped in newspaper. As she removed the object from the bag she observed the wrapping was partially torn off, disclosing a plastic bag containing a white powdery substance. It was later stipulated that the substance was cocaine and had a gross weight of 596.08 grams.
Officer Fulkerson continued to observe Lebron. After Lebron had exited the building, Fulkerson approached Lebron and asked to speak with him. Lebron agreed to speak with the officer. Fulkerson asked Lebron if he could see some form of identification and Lebron produced *818 a driver's license in the name of Pedro Lebron. When Lebron was asked to produce an airline ticket, he produced one in the name of Jesse Rivera. When asked about the name discrepancy, defendant Lebron looked at the ticket and stated that Eastern Airlines must have made a mistake. Lebron then told the officer that he did not know Martinez or Lozada and stated that he had been on vacation for a few days in Florida. When asked why he had given the white tote bag to Martinez, Lebron did not reply.
After a brief conversation with Officer Fulkerson regarding the substance found in the tote bag, Officer Burzinski placed Martinez and Lozada under arrest. As requested, Lebron, at that time, accompanied Fulkerson to the DEA office after being told an investigation was being conducted. Inside the DEA office, Burzinski advised Fulkerson that cocaine had been found inside the tote bag. Lebron was then placed under arrest. A search of Lebron's brown shoulder bag then took place. Two airline tickets were found, one for the previous week in the name of Lebron and another in the name of Juan Perez.
The defense then rested on its motion to quash the arrest and suppress the evidence in this case. The trial court denied defendant's motion. In so holding the court found that Lebron's brief possession of the bag when he got off the plane from a "source city," coupled with the exchange of information between Officers Fulkerson and Burzinski, would subject Lebron to arrest.
It was then stipulated that the State's evidence at trial would be the same as the evidence adduced at defendant's pretrial motions with the following additions. Officer Fulkerson testified that Lebron had agreed to the conversation he had with him outside the Eastern Airlines terminal building. Lebron did not respond when, during that conversation, he was asked why he had earlier given the tote bag to defendant Martinez, nor did he respond when he was asked why he was following Martinez and Lozada. Moreover, according to Fulkerson he checked the ticket held by Lebron in the name of Jesse Rivera with the tickets held by Martinez and Lozada. He found the numbers on all three tickets to be sequential. The tickets given to Fulkerson by Lozada had the names Juan Perez and Joyce Lozada on them.
The State then rested its case. Defendant moved for directed finding. The trial court denied this motion.
Lebron testified that he carried the white tote bag off the plane at the request of another man on the plane, who was carrying another bag. He testified he did not know what was inside the bag. He gave the man the tote bag once they were off the plane. Lebron then *819 walked out of the gate area, looked around for his family, and then went into the bathroom.
On cross-examination Lebron stated he had purchased his airline ticket in Miami for cash at an agency, but could not recall which agent, nor could he recall on what street the agency was located. He did not see Martinez at the Miami airport or on the airplane.
In rebuttal, it was stipulated that Fulkerson would testify that the defendant gave him an airline ticket in the name of Jesse Rivera, numbered 373. The tickets recovered from Martinez and Lozada were in the names of Juan Perez and Joyce Lozada and were numbered 372 and 374. The tickets subsequently recovered from Lebron's suitcase bore the names Pedro Lebron and Juan Perez and were dated one week earlier. The State stipulated that none of these tickets were inventoried and Officer Burzinski's police report made no mention of the tickets found in Lebron's suitcase.
Following closing arguments the trial court found Lebron guilty of possession of a controlled substance. The court noted, among other things, the unreasonableness and unlikelihood that a person carrying such a large amount of cocaine would pass it off to a stranger to hold. The court then heard arguments in aggravation and mitigation and proceeded to sentence Lebron to seven years in the Illinois Department of Corrections.

OPINION
Lebron initially contends that his conviction must be reversed because Officer Fulkerson did not have a "reasonable, articulable suspicion" to justify his seizure. The record reflects that Fulkerson waited for Lebron to exit the men's room. Upon leaving the men's room, Lebron proceeded to walk outside of the terminal. Fulkerson approached, asking to speak to him. Lebron agreed to speak to Fulkerson. These acts do not constitute a seizure and as such lack any foundation for invoking constitutional safeguards.
 1 The encounter between Lebron and Fulkerson never exceeded the permissible level of "a consensual inquiry in a public place." (See People v. Miller (1984), 124 Ill. App.3d 620, 464 N.E.2d 1197.) A person is "seized" only when by means of physical force or a show of authority, his freedom of movement is restrained. (United States v. Mendenhall (1980), 446 U.S. 544, 64 L.Ed.2d 497, 100 S.Ct. 1870.) Here, the encounter took place in a public area immediately outside of the exit doors of the terminal. Only one officer confronted Lebron. The officer approached him and identified himself as a police officer. He requested, but did not demand, to see Lebron's identification and *820 ticket. There was no indication that Lebron was restrained or intimidated in any fashion. Such conduct without more did not amount to an intrusion upon any constitutionally protected interest. (See People v. Brett (1984), 122 Ill. App.3d 191, 460 N.E.2d 876.) In short, nothing in the record suggests that Lebron had any objective reason to believe that he was not free to end the conversation and proceed on his way. (See Florida v. Royer (1983), 460 U.S. 491, 75 L.Ed.2d 229, 103 S.Ct. 1319.) Thus, we conclude that Fulkerson's initial approach to him was not a seizure and, accordingly, Lebron's motion to suppress was properly denied.
Lebron's reliance on Reid v. Georgia (1980), 448 U.S. 438, 65 L.Ed.2d 890, 100 S.Ct. 2752, is misplaced. The United States Supreme Court did not consider "the initial seizure question" in their decision. (Reid v. Georgia (1980), 448 U.S. 438, 443, 65 L.Ed.2d 890, 896, 100 S.Ct. 2752, 2755 (Powell, J., concurring).) Reid simply held that the DEA agent in that case could not as a matter of law have reasonably suspected the petitioner of criminal activity on the basis of the facts presented. That is not to say, as the defense suggests, that the DEA agent in that cause was prohibited from engaging in a permissible level of consensual inquiry. Reid delineates the criteria necessary to justify an investigatory stop. Because we have found that the detention of Lebron did not amount to an investigatory stop, Reid is inapplicable to the circumstances at bar.
 2 Lebron next contends the trial court erred in denying his motion to quash his arrest and suppress the evidence because no probable cause to arrest existed. However, as previously indicated, the initial questioning of Lebron did not rise to the level of an arrest nor did the request to have Lebron accompany Fulkerson to the DEA office constitute an arrest. (People v. Miller (1984), 124 Ill. App.3d 620, 464 N.E.2d 1197.) In Miller we found that a similar type of detention did not amount to a seizure. There, one agent approached the defendant and asked that he come to the DEA office. Here, the encounter took place outside of the terminal and the walk to the office was a very short distance. Lebron was asked to go to the office and he agreed. There is absolutely no indication of any threat of force. It was not until the cocaine was found on Martinez and the officers who had conducted the surveillance on the suspects had a conference that Lebron was placed under arrest. The exchange of information between the officers after the cocaine was found in the tote bag clearly amounted to probable cause.
 3 The final contention of Lebron is that his conviction must be reversed because the State failed to prove he had knowledge of the *821 contents of the tote bag he returned to Martinez. However, we will not disturb the judgment of the trial judge unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt. (People v. Hampton (1969), 44 Ill.2d 41, 253 N.E.2d 385.) When a defendant waives trial by jury and offers an explanation of his conduct, the plausibility of that story is to be determined by the trial judge. The trial judge, as the trier of fact, is entitled to disbelieve the explanation offered. People v. Kaprelian (1972), 6 Ill. App.3d 1066, 286 N.E.2d 613.
Among other things, the trial judge here specifically noted that Lebron exited the plane carrying the tote bag and then passed it to Martinez. The court considered the numbers of the tickets held by the three individuals and the fact that Lebron held No. 373, while Martinez held No. 372 and Lozada No. 374. The court considered that after Lebron voluntarily accompanied Fulkerson to the DEA, tickets were found in a search of his luggage and these tickets were for a Chicago-Miami flight a week earlier and were in his name and the name of Juan Perez. The name on the ticket Martinez was holding at the time of his arrest was Juan Perez. The trial court also noted that the amount of cocaine was very large and an amount so large, in fact, that it is not conceivable that it would be given to a stranger. Contrary to Lebron's assertions, the fact that the trial judge may have overestimated the street value of the cocaine is of no significance. Thus, the evidence is not so unsatisfactory as to leave a reasonable doubt of guilt. We therefore find the trial judge was not in error in finding Lebron guilty of being in possession of a controlled substance.
In light of the foregoing reasoning the finding of the circuit court is affirmed.
Affirmed.
SULLIVAN, P.J., and MURRAY, J., concur.
NOTES
[1] Miguel Martinez, who later pleaded guilty, is not a party to this appeal.