THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL CLAVER, Defendant-Appellant.
Third District   No. 3—86—0236

Opinion filed October 16, 1987.

Laird, Chickris & Brooks, P.C., of East Moline (Greg G. Chickris, of counsel), for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:
Defendant Paul Claver appeals from his conviction of the offense of unlawful possession of a controlled substance for which he was fined $22,000 and sentenced to six years in the Illinois Department of Corrections. The sole issue asserted by defendant concerns the propriety of the denial of his motion to suppress the seizure by the police of approximately eight ounces of cocaine from his luggage.

According to the testimony at the suppression hearing, defendant

arrived at the Quad City airport in Moline, Illinois, on August 6, 1986, on an Ozark Airlines flight originating in Florida. His arrival was observed by two plainclothes police officers, Investigator Mendoza and State Trooper Bouysse, who saw defendant look back over his shoulder several times as he came down the ramp. They then observed defendant walk up and down in the terminal lobby area near the exits. He looked out the windows towards the parking lot several times and finally went out towards the parking lot without collecting any luggage from the baggage area.

The two officers followed defendant and spoke to him as he stopped at his El Camino vehicle. They identified themselves as narcotics investigators and asked permission to search the shoulder bag he was carrying. He consented to that search, and the officers looked at his airline ticket and his driver's license before returning the bag to him. They asked him some questions about his trip. He told them he had been in Florida for 10 days on vacation, that he had other luggage, that he wanted to be sure his car was still in the parking lot before he claimed his larger pieces of luggage. The officers asked if he would mind if they searched the other luggage. According to both officers, he consented to such a search, but defendant, testifying in his own behalf, denied that he gave his consent. All testified that he did agree to meet the officers at the baggage claim area. He said he planned to drive his car around to the loading area near the door. As the officers walked the 75 yards back to the terminal, they turned and saw defendant exit the parking lot and drive away.

After waiting for his return, the officers identified the bags that belonged to defendant, waited until Ozark employees removed them from the baggage conveyor belt, and then asked the airline to notify them if anyone claimed the bags. The next day, without having obtained a search warrant, a special agent of the Illinois Division of Criminal Investigation searched the luggage and found two bags of cocaine hidden in the clothing. Later that day, defendant's roommate came to the airport to pick up defendant's luggage.

At the conclusion of the hearing, the trial court denied the motion to suppress. In a written order, the court found that no investigative detention occurred which would have invoked fourth amendment rights and that the defendant gave a valid consent to search his suitcases.

On appeal defendant sets forth two arguments: (1) that the search came after an "investigative stop for questioning" which was not pursuant to reasonable suspicion or probable cause and (2) that the State failed to carry its burden of proof showing that the consent was freely

and voluntarily given. We affirm.

■ Looking first at the validity of the consent, we note that the testimony of the police officers conflicted to some extent with that of the defendant concerning what was said in the parking lot. The question as to whether defendant consented to the search of his luggage was clearly a question of fact to be determined by the trial judge, who was in a position superior to ours to determine the credibility of the witnesses.

Defendant testified that he only consented to return to the luggage area to discuss the question of a search. Agent Mendoza testified that defendant gave his consent to search the luggage and further testified as follows:

"Q. Well, what words did he [defendant] say that made you think ***

A. He said yes.

Q. *** that he was going to consent to a search of his luggage?

A. He said he would.

Q. He didn't qualify that at all?

A. No. He nodded his head yes and he indicated yes."

Although defendant argues at some length that a "one word" assent is not sufficient to permit a search, there was evidence before the court that defendant said more than "yes." Officer Bouysse testified as follows:

"After we searched his handbag that he had, we asked permission to search his luggage he had back at the airport, if he minded we search it. He said no, he would not mind. We could go ahead and search it."

■ When evidence is in conflict, as it is here, the finding of the trial judge must be accepted unless that finding was clearly unreasonable. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) There is nothing patently unreasonable in the finding that defendant consented to a search of his luggage. The testimony of the two officers was sufficient to support the trial judge's finding of consent.

Defendant also argues that, even if the finding that he consented is upheld, that consent is invalid because it was tainted by the illegal stop and detention which preceded it. In developing this argument, defendant claims he was surrounded by the officers, pinned against his truck, threatened with a search warrant, badgered by questions, and that he did not feel he was free to leave. The record belies these contentions. The officers stated that they came up to defendant as he stood beside his car. One stood three or four feet behind him and the

other was four feet to the side of defendant. At no time did they tell him that he could not leave, and in fact, they left him alone when they returned to the terminal, thereby allowing him to leave the airport without any attempt at restraint. There is no evidence that he was "pinned against the truck." He was not physically searched, and the officers denied telling defendant that they would get a search warrant if he did not consent to the search of his luggage.

The evidence established that these officers were observing arrivals from Florida at the Quad City Airport because large quantities of drugs were coming from Florida. Defendant aroused the officers' suspicions because he was carrying the sort of hand bag or shoulder bag often used by drug couriers, because he kept looking over his shoulder, because he walked up and down the terminal lobby and looked out the windows, and because he went to the parking lot without claiming his luggage. On the basis of these suspicious attributes and actions, the officers approached defendant, identified themselves, and asked him some questions pertaining to their narcotics investigation.

A similar investigative stop occurred in *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, where defendant was stopped on an airport concourse solely because she fit the "drug courier profile." Upon request she furnished her driver's license and air ticket. The ticket was in a different name than the license. Defendant then agreed to accompany the officers to an office for further questions, and once in the office she consented to a search of her person by a policewoman. As defendant disrobed, she produced from her undergarments two packages containing cocaine. In a divided opinion, the Supreme Court affirmed the validity of the stop and the search, holding that her constitutional rights were not violated. In a well-reasoned opinion, Justice Stewart stated the view that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." (446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.) Justice Stewart went on to articulate the standard applicable in such situations:

> "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer,

some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.

This test was analyzed and followed in *United States v. Berry* (5th Cir. 1982), 670 F.2d 583, where the court found the consent to search was voluntary and not the product of an illegal detention. *Berry*, like most of the airport cases, involved a request by the officers that the suspect go with them to an office for further questioning. In some cases, the suspect's driver's license or ticket was not returned at once, thus inhibiting his ability to leave the airport. (*E.g.*, *United States v. Robinson* (11th Cir. 1982), 690 F.2d 869.) In other cases, the suspect's avenues of departure were blocked, or the suspect was otherwise given little choice in accompanying the officers. (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *United States v. Berryman* (1st Cir. 1983), 717 F.2d 651.) In the *Berry* case, the court noted that the officers did not interfere with defendant's progress by merely inquiring if he was willing to answer some questions, that the officers merely identified themselves without an intimidating display of official authority, and that a short amount of time was involved before defendant consented to cooperate.

Illinois cases have applied the same rules. In *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, the reviewing court found that the defendant was not free to walk away when agents had blocked his exit onto an escalator, questioned him at length, and told him his luggage would be detained. This was held to be an improper investigatory stop. In another case involving an airport search, *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954, the court held that the defendant's consent to search his luggage was not voluntary because, after he refused to consent, he was told by police officers that he had no choice and that if he refused his bag would be seized.

A valid consensual search was found in *People v. Brett* (1984), 122 Ill. App. 3d 191, 460 N.E.2d 876, where the defendant's consent to a search of his luggage at O'Hare Airport followed the initial encounter and came after the officer had returned his ticket and identification to him. The reviewing court reversed the trial court's suppression order and found that a reasonable person in defendant's position could have considered he was not being detained but was free to go. The fact that defendant followed the officers downstairs to the luggage area was held to have been his voluntary act and not part of an improper detention. Similarly, an order to suppress was reversed in *People v. Miller* (1984), 124 Ill. App. 3d 620, 464 N.E.2d 1197, where the court

found that the encounter between the defendant and the agent "never exceeded the permissible level of 'a consensual inquiry in a public place.'" (124 Ill. App. 3d 620, 624, 464 N.E.2d 1197, 1200.) In *Miller* the search of defendant's bag and boots was found to have been pursuant to his voluntary consent.

In the case at bar, as in *Miller*, defendant consented at once when the officers asked if they could search his shoulder bag. The encounter occurred in an open parking lot, and the circumstances were not intimidating. Defendant's testimony that he did not feel free to leave when the officers were questioning him is not very convincing since they in fact turned their backs to him and walked away from him and since he in fact did leave the airport without the officers making any attempt to pursue him. Furthermore, defendant's ticket and driver's license were returned to him after his shoulder bag was checked, thus not inhibiting his leaving. The facts of this case are consistent with the conclusion that defendant was not "seized" and thus that defendant's consent to search his luggage was not the result of coercion and was not tainted by an illegal seizure.

We conclude, therefore, that the denial of defendant's motion to suppress was not error and that the judgment of the circuit court of Rock Island County should be affirmed.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.