THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HERLINDO ZAMORA *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—87—3627

Opinion filed September 11, 1990.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Richard Nathaniel, Assistant State's Attorneys, of counsel), for the People.

John R. DeLeon, of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Defendants Herlindo Zamora (Herlindo), his son, Alfonso Zamora (Alfonso), and Lisa Bouza (Lisa) were arrested on several narcotics charges after the police recovered two plastic bags containing controlled substances from the front seat of a vehicle in which they were sitting. The State appeals from an order of the circuit court granting defendants' motion to quash their arrest and to suppress the physical evidence. We affirm.

We are presented two issues for review: (1) whether the police were legally justified in approaching defendants' vehicle and request-

ing Herlindo to produce his driver's license; and (2) whether the police had a reasonable belief based on specific and articulable facts that defendants were dangerous or could gain immediate access to weapons in their car, which would have justified a search of the vehicle pursuant to *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469.

Defendants were charged by indictment with two counts of possession of more than 15 grams of a controlled substance, two counts of possession of more than 15 grams of a controlled substance with intent to deliver, and armed violence predicated on possession with intent to deliver. At a hearing held on defendants' motion to quash arrest and to suppress physical evidence, Alfonso and Cicero police officer John Beuhle (Beuhle) provided the following testimony.

According to Alfonso, age 19, on February 27, 1987, at about 11 p.m., his father, Herlindo, was driving him home. Herlindo and Lisa sat in the front seat, and Alfonso and a minor female, who was not charged, sat in the back seat. As they were riding on 14th Street in Cicero, the gas pedal malfunctioned, so Herlindo coasted into the mouth of an alley and stopped, with the car partially blocking the sidewalk. All of the passengers remained in the car while he crawled underneath it to hook up the spring connecting the gas pedal. Having repaired the pedal, he returned to the driver's seat, put the car in gear and was about to pull out, when a police car drove up and flashed its lights. Herlindo voluntarily exited the car and engaged in a conversation with the officer who approached him. The officer shined a flashlight into the car and then told everyone to get out. The officer and his partner then searched the inside of the car and pulled out a plastic bag from what Alfonso thought was the front seat, but was not sure, because the officers had separated the occupants of the car and had them "facing different ways." At this point, all four subjects were placed under arrest. Back-up police units arrived and searched the inside of the car about four or five times. The police did not show any of the parties either a search warrant or an arrest warrant.

On the night in question, Beuhle, a part-time reserve officer with the Cicero police department, and his partner were on patrol in a squad car, when at approximately 11 p.m., the officers noticed a car parked in the alley abutting 14th Street between 48th Court and 49th Avenue, with its front end near the sidewalk. One individual lay under the car on the driver's side and another stood toward the rear of the car. Beuhle turned around at the end of the block and parked the squad car with its passenger side parallel to the front end of the other vehicle, which was still stationary. Only the squad car's headlights

were on and were not shining in the other vehicle's direction. The driver got out of the vehicle as Officer Beuhle got out of his, and Beuhle asked him whether there was a problem. When the driver responded "no," Beuhle asked to see his driver's license. Until this point Beuhle had not observed any violations of law and had no information that either the vehicle or its occupants had been involved in any crime. The officer's examination by defense counsel proceeded as follows:

"Q. *** Why did you ask for a driver's license?

A. As a form of identification.

Q. That was your sole purpose at that point?

A. Correct.

Q. Was there any special reason you felt you had to identify this individual?

A. Just the neighborhood. He is in an alley, a dark alley. I'd like to know if he lived around there or not. There are a lot of burglaries in that area. I'd like to know if he really had any reason there.

Q. So, basically, that was your reason?

A. Correct.

Q. Sort of a routine check on your part?

A. Identification.

Q. Identification."

Herlindo then told the officer that he did not have a driver's license, walked to the back of the vehicle and began laying out papers from his wallet on the trunk, apparently in an attempt to find some sort of identification. After having been to the back of the car with Herlindo, Office Beuhle walked over to the side of the car, a two-door Buick with bench seats, and shined a flashlight inside. There he saw three individuals. Without physically entering the vehicle, he noticed a "Kleenex" box nearly full of tissues on the front seat, and on top of the tissues were two clear plastic bags, one containing a brown chunky substance, and the other, a white chunky substance. In Beuhle's opinion, based on his experience and training as a police officer, the bags contained heroin and cocaine. He then reached inside to pick up the bags and placed them on top of the car. His partner called in back-up units, and when they arrived, all four occupants were ordered out of the car and a search of the vehicle was conducted.

While examining Beuhle, defense counsel pointed out a discrepancy between the officer's police report and his testimony in court: the police report stated that he found the controlled substance "in the front seat," whereas he testified that he found it "in the Kleenex box

on the front seat." He also testified that when he drove past the parked car the first time, there were two individuals standing outside the car, but when he pulled up, the individuals were in the car. Finally, Beuhle stated that he never saw Herlindo driving the car.

Although it is not mentioned in the briefs, the record also reflects that defendant Lisa was carrying a revolver on her person at the time of her arrest. The weapon was one of the items of evidence she sought to suppress.

After the hearing the trial judge commented that, in his opinion, Herlindo's behavior was "very suspicious"; however, he noted that Officer Beuhle did not share the same belief. He also opined that Beuhle was being honest, but went on to draw attention to the discrepancy between the police report and Beuhle's testimony. He accordingly granted defendants' motion to quash and suppress, holding that the police had conducted a search and that neither the search nor the subsequent arrests were supported by probable cause. The State filed a timely notice of appeal.

■■ A reviewing court may not disturb the findings of a trial court in a hearing on a motion to suppress unless they are manifestly erroneous. (*People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252.) Furthermore, a reviewing court must accept a trial court's findings with respect to conflicts in the evidence unless they are clearly unreasonable. *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1; *People v. Claver* (1987), 162 Ill. App. 3d 62, 515 N.E.2d 324.

We note at the outset that, in reviewing Beuhle's testimony, the trial court determined that when the officer first noticed defendants' car parked in the mouth of an alley in Cicero at 11 o'clock at night and saw two individuals, one lying underneath the car and one standing nearby, he was concerned about the incidence of burglaries in the area but was, in the words of the judge, "not suspicious." In fact, Beuhle testified that he asked to see defendant Herlindo's driver's license for the sole purpose of identification and insisted that he had not observed any violations of law prior to that. Furthermore, the trial judge found that the two bags of contraband were recovered as a result of a search rather than a plain view inspection.

This case lends itself to a two-step analysis of the fourth amendment issue with which we are presented. The first inquiry is whether Officer Beuhle was justified in stopping defendant Herlindo and asking to see his driver's license; and second, whether he properly seized the contraband from the front seat of the car.

■■ In *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880, the Supreme Court held that a police offi-

cer may stop and frisk an individual without probable cause if he is able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Illinois codified *Terry* in section 107—14 of the Code of Criminal Procedure of 1963, which states:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions." Ill. Rev. Stat. 1987, ch. 38, par. 107—14.

■ Defendants discuss numerous Illinois opinions which have held on varying facts that the police acted unreasonably, on the basis of a mere "hunch" or suspicion of criminal activity, in stopping motorists and requesting them to produce a driver's license and registration. (*People v. Vanderver* (1987), 158 Ill. App. 3d 178, 510 N.E.2d 1293 (car driving slowly at 2:30 a.m. through parking lot of apartment complex plagued by automobile thefts); *Parking v. Grotti* (1983), 112 Ill. App. 3d 718, 445 N.E.2d 946 (car matching description of car seen "hot rodding" two weeks previously); *People v. Fox* (1981), 97 Ill. App. 3d 58, 421 N.E.2d 1082 (car driving at night through deserted boat docks where, according to public complaints, partying and littering had been going on); *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279 (car turning around and travelling slowly through an industrial area in which two recent burglaries had occurred); *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88 (car parked halfway on roadway in residential neighborhood); *People v. Harr* (1968), 93 Ill. App. 2d 146, 235 N.E.2d 1 ("suspicious" car leaving gas station which was closed for the night).) In spite of Officer Beuhle's testimony that his sole purpose in requesting to see Herlindo's driver's license was identification, the trial judge felt that "[a] lot of things *** what Mr. Herlindo was doing [were] very suspicious." Furthermore, the judge stated that the most important issue to decide was whether there was an illegal search, for "[i]f there was no search conducted, this motion is moot." These statements imply that the judge found that the officer conducted a permissible *Terry*-type stop when he asked Herlindo for identification. Indeed, such a conclusion is not unwarranted, especially in light of the facts which the officer had at his disposal at the time of the stop: a car parked in the mouth of an alley at 11 o'clock at night in February in a neighborhood often plagued by burglaries, a person lying underneath the car and another person standing nearby.

Since each case dealing with police interference with an individual's fourth amendment right to privacy necessarily turns on its own unique circumstances (see *Terry v. Ohio*, 392 U.S. at 29, 20 L. Ed. 2d at 910, 88 S. Ct. at 1884), the decisions cited by defendants in which the appellate court found the conduct of the police to be unreasonable are not dispositive of the present case.

Defendants also rely heavily on *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401, wherein the Supreme Court held that it is unreasonable under the fourth amendment for a police officer to stop an automobile and detain its driver for the purpose of checking his driver's license and registration unless "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." Defendant's reliance on *Prouse* is inapt, however, because there the police stopped the vehicle completely at random, without having observed any suspicious activity or any traffic or equipment violations. Here, on the contrary, the car attracted the officer's attention because of its unusual location at a late hour, the activity of two persons outside of it and the prior history of crime in the area.

A more appropriate analysis to compare with the instant case can be found in *People v. Murray* (1990), 137 Ill. 2d 382, in which the supreme court held on facts similar to those we encounter here that no "seizure" within the meaning of the fourth amendment had occurred. Rather, the court adopted Justice Stewart's reasoning in *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, in which he stated that:

> " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Murray*, 137 Ill. 2d at 389, quoting *Mendenhall*, 446 U.S. at 553-56, 64 L. Ed. 2d at 509-10, 100 S. Ct. at 1877-78.)

Circumstances indicating that a seizure has taken place include:

> "(1) the threatening presence of several police officers, (2) the display of a weapon by a police officer, (3) some physical touching of the person of the citizen, and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*Murray*, 137 Ill. 2d at 390.)

The court concluded that none of these circumstances was present when two police officers stopped behind a car legally parked on a

frontage road, tapped on the window to awaken the driver, then asked him to step out of the vehicle and produce his driver's license; thus, the court held, no fourth amendment violation had occurred.

■ Here, although the State did not raise the issue on appeal as to whether a "seizure" within the meaning of the fourth amendment did, in fact, occur, we are nevertheless aware that taking the incident out of the fourth amendment analysis would not dispose of the case, for we must still address the manner in which the police officers discovered the contraband. With respect to this latter issue, the State argues that the plain view doctrine brings Officer Beuhle's discovery of the contraband within the range of permissible police activity under the fourth amendment. The plain view doctrine holds that a police officer may make a warrantless seizure of an item in plain view provided he has prior fourth amendment justification for having access to it. (*Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535.) Also, a police officer's use of a flashlight does not activate constitutional protection. (*Brown*, 460 U.S. at 740, 75 L. Ed. 2d at 512, 103 S. Ct. at 1542, citing *United States v. Lee* (1927), 274 U.S. 559, 71 L. Ed. 2d 1202, 47 S. Ct. 746.) The cited authorities would be a persuasive argument in favor of the State in the present case but for the trial court's decision to disbelieve the officer's testimony that he initially observed the two plastic bags containing narcotics from the outside of the car. We are thus constrained by his decision to focus on but one question: if we take the testimony of Alfonso as credible, as did the trial court—that Officer Beuhle first ordered everyone out of the car, searched the interior with his partner, then found the drugs and arrested the occupants—did the officers violate defendants' fourth amendment rights? See *People v. DeMorrow* (1974), 59 Ill. 2d 352, 359, 320 N.E.2d 1, 5-6.

■ The answer depends on the applicability of *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, wherein the Supreme Court extended the rationale of *Terry v. Ohio* to a protective search of the passenger compartment of a vehicle. *Long* held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (463 U.S. at 1049, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481, quoting *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.) However, the Court stressed that such a search is by no

means an "automatic" right of the police upon a valid *Terry* stop of a motorist, in contrast to the situation in which the police have effected a custodial arrest, as was the case in *New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860. (*Long*, 463 U.S. at 1049 n.14, 77 L. Ed. 2d at 1220 n.14, 103 S. Ct. at 3481 n.14.) The State's reliance on *Belton* is unwarranted, because according to Alfonso's testimony, Officer Beuhle and his partner arrested defendants only *after* retrieving the narcotics from the inside of the car.

The facts in the present case bear little if any resemblance to what occurred in *Long*. There the police saw a vehicle driving erratically and at excessive speed in a rural area until it turned down a side road and swerved into a ditch. (463 U.S. at 1035, 77 L. Ed. 2d at 1210-11, 103 S. Ct. at 3473.) The occupant, who met the officers at the rear of the car, "appeared to be under the influence of something," took a long time to respond to the officers' request for a driver's license, and when asked for a registration, began walking toward the open car door. (463 U.S. at 1035-36, 77 L. Ed. 2d at 1211, 103 S. Ct. at 3473-74.) The officers followed him and both observed a large hunting knife on the floorboard of the driver's side. They stopped defendant and patted him down, but discovered no weapons. Then one of the officers shined a flashlight inside the car and noticed a pouch protruding from under the front arm rest. After reaching in and retrieving the pouch, he discovered that it contained marijuana. At this point, defendant was arrested on a charge of possession. A subsequent search of the trunk of the car uncovered approximately 75 pounds of marijuana.

In contrast to the facts in *Long*, Officer Beuhle testified that he observed no violations of traffic or any other laws before he stopped to investigate defendants and their vehicle. Furthermore, there is no evidence that Herlindo appeared intoxicated or otherwise "under the influence" when he spoke to Beuhle. Even more significant, neither Beuhle nor his partner observed any weapons in the car. In fact, the officers' behavior in allowing the three passengers to remain in the car while they talked to Herlindo and in failing to pat him down for weapons indicates that they did not feel any immediate danger for their safety as the officers did in *Long*. In the absence of any testimony from the officers articulating a reasonable suspicion that their safety was in danger at the time of the encounter with Herlindo prior to the search, we may not assume that it was even reasonable for the officers to be in fear of their safety.

■ Hence, although we find that the police-citizen encounter between the officers and defendants was proper under the fourth

amendment analysis of either *Terry* or *Murray*, we do not deem the trial court's assessment of Officer Beuhle's credibility and its ultimate finding that the contraband was not in plain view when the officers discovered it to be manifestly erroneous. Lisa also challenges the seizure of a revolver from her person; however, since its legality hinges on our resolution of the fourth amendment issues we have discussed above, it does not merit separate discussion. Thus, we affirm the order of the circuit court granting defendants' motion to suppress.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.