THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES MOORE, JR., Defendant-Appellant.

Third District    No. 3—92—0994

Opinion filed March 31, 1994.

Janet Gandy Fowler, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

David W. Neal, State's Attorney, of Morris (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

On October 29, 1991, the defendant, James Moore, Jr., was convicted of possession with intent to deliver a controlled substance (cocaine) (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(a)(2)). He was subsequently sentenced to serve eight years in the Department of Corrections. The defendant appeals.

The sole issue before us is whether the trial court erred in denying the defendant's motion to suppress evidence seized from the interior of his automobile. For reasons which follow, we find no error in the trial court's decision. Accordingly, we affirm.

Evidence admitted at the hearing on the defendant's motion to suppress established that on February 10, 1991, Officers Mark Scott and Bill Dolan of the Dwight police department received a radio dispatch that an automobile was parked along Interstate 55. The vehicle was partially blocking the passing lane of the interstate highway. The officers responded to the message and found the defendant was asleep and slumped against the driver's side door. The vehicle's motor was running in neutral, and the car window was cracked open about six inches. The officers observed an open bottle of gin on the seat beside the defendant. Officer Scott smelled the odor of alcohol and reached inside the vehicle to turn off the ignition. Scott awoke the defendant and asked him to perform field sobriety tests. The tests were unsuccessful because the defendant had a glass eye and leg injuries from a prior accident.

Scott informed the defendant that he would be ticketed for illegal transportation of alcohol and improper parking. However, the officer said he would not charge the defendant with DUI. Scott told the defendant that his vehicle would be towed to a service station until a sober driver could pick it up. Scott offered to drive the defendant into Dwight so he could make arrangements for his own transportation. The defendant asked Scott if he would move the vehicle to prevent it

from being struck by a passing motorist. Scott agreed to move the defendant's car.

Scott testified that before he moved the defendant's car, he did a cursory search of the area immediately surrounding the driver's seat as he entered the vehicle. Scott then started the car and drove it off the interstate highway. After Scott parked the defendant's car, he noticed two cigarette packages lying on the dashboard. Scott testified that, as a smoker, he believed the defendant would appreciate having the cigarettes while he waited for his ride home. It was with this sole purpose in mind that Scott picked up the two cigarette packages. The top of one package had been torn off, and Scott looked inside to see if there were any cigarettes left. Instead of finding cigarettes, Scott observed several small, clear plastic bags. On further inspection, Scott observed that the bags contained a white powdery substance which he believed to be cocaine.

At that point, the defendant was arrested for unlawful possession of a controlled substance. The defendant's car was subsequently searched and $4,740 in cash, 96 packets of white powder, empty plastic baggies, a sifter, and more white powder believed to be cocaine were found in the vehicle.

The defendant sought to suppress all of the evidence seized following the officer's search of the cigarette package. The defendant argues that the search was illegal for the following reasons: (1) the officer lacked probable cause to believe the defendant was involved in any criminal activity; (2) the defendant had not given his consent to search the car; and (3) the search was not incident to a lawful arrest.

In denying the defendant's motion to suppress evidence, the trial judge explained, "I don't think that there was a search or seizure in violation of defendant's rights under the fourth amendment."

In analogous situations, the Supreme Court has held that a police officer's inadvertent discovery of contraband during either a routine driver's license check or during an arrest for minor traffic violations does not violate fourth amendment protections. (*New York v. Class* (1986), 475 U.S. 106, 89 L. Ed. 2d 81, 106 S. Ct. 960; *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535.) In *Brown*, the officer conducting a routine driver's license check stood outside the defendant's car and shined his flashlight into the vehicle while the defendant looked for his license. In the process, the defendant dropped a balloon on the front seat and, while rifling through the glove compartment, the defendant exposed to the officer's view plastic vials, white powder, and an open bag of party balloons. The officer recognized the material as heroin paraphernalia and made an arrest. Based on these facts, Justice Rehnquist, writing for the plurality,

applied a "plain view" analysis to the circumstances surrounding the officer's conduct (see *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022) and concluded that the officer's seizure of the green balloon "trenched upon no right secured to [defendant] by the Fourth Amendment," and his observation of the contents of the glove compartment "was not a search within the meaning of the Fourth Amendment." *Brown*, 460 U.S. at 740, 75 L. Ed. 2d at 512-13, 103 S. Ct. at 1542.

In *Class*, the officer stopped the defendant for speeding and driving with a cracked windshield. After the defendant got out, the officer entered the defendant's vehicle and moved papers that had obscured his view of the vehicle identification number (VIN), thereby disclosing the contraband, a weapon. Justice O'Connor, writing for the Court, initially noted that the VIN on the dashboard of a vehicle is normally exposed in plain view to anyone outside the vehicle. However, since the officer entered the defendant's car without his consent to examine the VIN, the Court characterized the officer's conduct as a "search," but determined that no fourth amendment violation had resulted. Justice O'Connor reasoned that the "search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed [the defendant] commit two traffic violations." *Class*, 475 U.S. at 119, 89 L. Ed. 2d at 93, 106 S. Ct. at 968.

Obviously, "each case dealing with police interference with an individual's fourth amendment right to privacy necessarily turns on its own unique circumstances" (*People v. Zamora* (1990), 203 Ill. App. 3d 102, 108, 560 N.E.2d 1053, 1057, citing *Terry v. Ohio* (1968), 392 U.S. 1, 29, 20 L. Ed. 2d 889, 910, 88 S. Ct. 1868, 1884), and the facts before us today cannot be neatly pigeon-holed as either a "*Brown*" or a "*Class*" case. As in *Class*, Officer Scott determined that the defendant had committed traffic violations, and it was not until he entered the defendant's vehicle and disturbed the cigarette package that Scott viewed the contraband. Officer Scott did not enter the defendant's vehicle to either search or examine anything in its interior. Also, the defendant gave Scott consent to enter his car, although not for the purpose of conducting a search of its contents. The record is clear that the package containing the contraband was exposed to open view.

Based on our review of the record, we find the analysis applied in *Brown* appropriate to the circumstances here. The Court in *Brown* approved the three-pronged *Coolidge* analysis for the seizure of objects left in "plain view:"

"First, the police officer must lawfully make an 'initial intrusion' or otherwise properly be in a position from which he can view a particular area. [Citation.] Second, the officer must discover incriminating evidence 'inadvertently,' which is to say, he may not 'know in advance the location of [certain] evidence and intend to seize it,' relying on the plain-view doctrine only as a pretext. [Citation.] Finally, it must be 'immediately apparent' to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure." (*Brown*, 460 U.S. at 737, 75 L. Ed. 2d at 510, 103 S. Ct. at 1540-41.)

Applying the same analysis here, we find that no search occurred when Officer Scott observed the contraband in the cigarette package in "plain view." In so concluding, we focus our inquiry on the officer's conduct and his objective at the time he discovered the contraband.

Officer Scott entered the vehicle at the defendant's request after informing the defendant that he would be charged with two traffic offenses. Thus, the first prong of *Brown* has been met as Scott was lawfully and properly in a position to observe the cigarette package lying on its side on the dashboard.

Next, the positioning of the package leads to the assumption that either end of the package was observable by anyone standing outside the vehicle. When Scott picked up the cigarette package, his sole objective was to perform a gratuitous service for a fellow smoker. Scott did not take any steps to open the package because the top had already been torn away. Scott looked inside the package to see if it contained cigarettes, not to search for contraband. Thus, Officer Scott's discovery of the cocaine was purely inadvertent.

Third, we do not hesitate to find that it was "immediately apparent" to Officer Scott that the material he observed within the cigarette package contained a controlled substance subject to seizure. The clear plastic bags of white powder, observable to anyone viewing the cigarette package without prying into it, were readily recognizable to the officer as cocaine.

In sum, we agree with the trial court that Officer Scott's discovery of the cocaine on the dashboard of the defendant's vehicle was not a "search" implicating fourth amendment protections, because the defendant in this case had no reasonable expectation of privacy in a cigarette package lying exposed in open view to the general public.

Officer Scott's observation of the contraband in the cigarette package gave him probable cause to search the entire vehicle. (*People v. Wells* (1993), 241 Ill. App. 3d 141, 145, 608 N.E.2d 578, 582; *People v. Schrems* (1992), 224 Ill. App. 3d 988, 998, 586 N.E.2d 1337, 1345.)

Accordingly, we affirm the judgment of the circuit court of Grundy County denying the defendant's motion to suppress.

Affirmed.

STOUDER and LYTTON, JJ., concur.