THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES ZINNAMON, Defendant-Appellant.

First District (5th Division)   No. 1—90—2411

Opinion filed November 5, 1993.

Rita A. Fry, Public Defender, of Chicago (Lisa Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Maureen Hart, and Kenneth Goff, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, James Zinnamon, was convicted of aggravated battery and armed violence. The jury found defendant not guilty on an attempted murder charge. The aggravated battery conviction was merged with the armed violence conviction, and defendant was sentenced to nine years in the Illinois Department of Corrections. On appeal, defendant seeks reversal of his conviction. In the alternative, defendant seeks a reduction in his sentence or remand for a new sentencing hearing. Defendant contends that (1) the trial court erred in denying motions to quash his arrest and suppress evidence resulting from the arrest because there was no probable cause for the arrest; (2) he was deprived of a fair trial because of ineffective assistance of counsel; and (3) the trial court erred in denying his request for a continuance at the sentencing hearing.

FACTS

On August 25, 1988, Robert McClaurin was approached in a park by three men. One of the men, Steve Zinnamon, was known to McClaurin. One of the other men asked McClaurin about a motorcycle stolen from Steve Zinnamon. After McClaurin told the man he knew nothing about the motorcycle, the man hit him in the head with a club-like object and then shot him three times as he attempted escape.

Defendant was later arrested and charged with attempted murder, aggravated battery, and armed violence. Prior to his jury trial, defendant moved to quash his arrest and suppress statements and an identification made after the arrest. Detective Higgins of the Chicago police department testified at the hearings on those pretrial motions. He stated that he interviewed the victim at the hospital after the shooting. The victim, Robert McClaurin, told him that he was accosted in the park by three men, one of whom was Steve Zinnamon, defendant's brother. According to Detective Higgins, McClaurin described the man who shot him as a black male, age 32, about 6 feet tall, weighing about 210 pounds, who he believed was Steve Zinnamon's older brother. He did not know who the third man was.

Detective Higgins also testified that he interviewed two witnesses to the shooting. They told him that the man who shot McClaurin was a black male in his early thirties, about 6 feet tall and weighing 210 to 220 pounds. The witnesses were not close enough to identify the man's face. The three men fled in an orange GM automobile with an off-white vinyl top.

Detective Higgins further testified that he visited Steve Zinnamon's home and spoke with his sister, who told him that Steve did not have an older brother fitting the description given by McClaurin and the two witnesses. Detective Higgins later observed an orange Chevrolet with an off-white roof on the block where Steve Zinnamon lived. He traced the license and discovered that the car was registered to defendant, who lived on the same block. He left a card with defendant's mother at defendant's address, asking that defendant call him. Defendant later called Detective Higgins and acknowledged that he owned an orange Chevrolet with an off-white roof. He indicated he would meet with Detective Higgins.

According to Detective Higgins' testimony, defendant went to the police station the next day. Detective Higgins, observing that defendant fit the description given by McClaurin and the two witnesses, arrested defendant. After being advised of his constitutional rights, defendant was photographed. While defendant was still at the police station, McClaurin identified defendant from a photographic array shown him at the hospital. After being told of the identification, defendant gave a signed statement to the State's Attorney, admitting that he hit McClaurin with a hammer handle, then shot him three or four times. Defendant stated that he did not intend to kill McClaurin.

On cross-examination, Detective Higgins acknowledged that, although the original report contained the physical description recited on direct examination, his partner's notes indicated that the person who shot McClaurin was age 30 to 35, 5 feet 9 inches tall, and weighed 200 pounds.

The court found that there was probable cause to arrest defendant and that defendant's statement had been voluntary. At trial, Anthony Smith and Victor Davis testified that they witnessed the incident between McClaurin and three men, one of whom they knew to be Steve Zinnamon. After the shooting, they observed the three men leave in a burnt orange Buick or Chevrolet with a white vinyl roof. Davis testified that he gave police a description of the man who shot McClaurin, although he did not see the man's face. He thought he had described the man as of stocky build, and about 6 feet 1 inch tall. Detective Higgins' trial testimony was the same as his testimony during the pretrial motion hearings.

McClaurin also testified at trial. He identified defendant as the man who shot him. McClaurin stated that Steve Zinnamon was one of the men who accosted him, and that Steve punched him in the face and asked him for Steve's motorcycle. On cross-examination, McClaurin said that he told police the man who shot him was 5 feet 7 inches or 5 feet 8 inches tall, dark, weighing 175 to 180 pounds. When asked if on the day of the shooting he told police that Steve Zinnamon's brother had shot him, he replied, "No, I did not, sir." Over the State's objection, McClaurin denied on cross-examination that he was a drug dealer and that Steve Zinnamon owed him money for drugs. He also denied stealing Steve Zinnamon's motorcycle and threatening to accuse defendant of the shooting if defendant did not pay his brother's debt.

On redirect examination, the following exchange took place:

"Q. You never saw him before the night he shot you in the park, is that correct?

A. That's correct.

Q. And you did not know him that night?

A. No, I didn't.

Q. When you talked to the police, you weren't sure whether he was Steve Zinnamon's brother or not, were you?

A. No, I didn't. I didn't know.

Q. Therefore, you didn't tell the officers you knew for sure he was the brother of Steve Zinnamon, correct?

A. Correct."

The State moved to bar the defense from presenting testimony of Christine Guider and defendant's sister, Stephanie Miller, regarding the victim's being a drug dealer. After a hearing outside the presence of the jury, during which the two women testified, the court found their testimony was not relevant to the issues. The court stated it was granting the motion to bar the testimony of Christine Guider and Stephanie Miller as to alleged drug sales by the complainant during the month of August 1988. The court then indicated that the jury would be instructed to disregard any questions about alleged sales of drugs by McClaurin.

The trial resumed in the presence of the jury. Defendant, his sister, and his wife all testified for the defense that defendant was at a party at his sister's home at the time of the shooting. Christine Guider testified that she witnessed the shooting in the park, shortly after telephoning defendant at his sister's home, and that defendant was not at the park at the time of the shooting. She left the park afterwards and did not notify the police.

The jury found defendant guilty of aggravated battery and armed

violence and not guilty of attempted murder. On June 6, 1990, a presentence investigation report was tendered to the State and to defense counsel. The matter was continued until June 8, for post-trial proceedings. On June 8, post-trial motions were heard, including a motion to reconsider the motion to quash the arrest. The court denied that motion.

During the argument on the motion for a new trial, defense counsel claimed that the court had improperly restricted efforts to introduce evidence that McClaurin was engaged in drug sales and that Steve Zinnamon owed a drug debt to McClaurin. The trial judge stated that he had merely ruled that defendant could not introduce hearsay and circumstantial evidence of McClaurin being involved in drug sales unrelated to the case. Defense counsel stated that he had misunderstood the court's ruling, believing it barred any testimony about McClaurin's drug dealing and his motive for accusing defendant of shooting him.

After the court denied the post-trial motions, defense counsel asked for a continuance. Defense counsel stated that, because he had thought only the post-trial motions were to be heard that day, he needed more time to review the presentence investigation report and secure the presence of witnesses. The court denied the motion for continuance, but recessed until later that day. When court reconvened, defendant's counsel indicated several corrections to the presentence investigation report, offered testimony of several witnesses in mitigation, and entered a stipulation regarding testimony of another witness in mitigation. The court sentenced defendant to nine years in the Illinois Department of Corrections for the armed violence conviction.

OPINION

Defendant's first contention is that the trial court should have granted the motions to quash his arrest and to suppress his statement and McClaurin's photographic identification because the police did not have probable cause to arrest defendant. Defendant concedes that the evidence presented through Detective Higgins' testimony at the pretrial hearings was sufficient to support the trial court's initial finding of probable cause. However, defendant argues that the victim's testimony at trial contradicted Detective Higgins' testimony and thus negated the existence of probable cause.

■ A pretrial ruling on a motion to suppress is not final until final judgment is entered. The ruling may be changed or reversed at any time before final judgment. (*People v. Caballero* (1984), 102 Ill. 2d 23, 35-36, 464 N.E.2d 223, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed.

2d 298, 105 S. Ct. 362; *People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808.) The trial court can consider testimony during the trial in determining whether probable cause existed. (*People v. Braden*, 34 Ill. 2d at 520.) Thus, it was proper for the trial court to consider the trial testimony of all the witnesses, including McClaurin, as well as the pretrial testimony of Detective Higgins in making a final determination as to probable cause.

"Probable cause to arrest exists 'when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' [Citation.]" (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, *cert. denied* (1980), 449 U.S. 1010, 66 L. Ed. 2d 467, 101 S. Ct. 564.) Whether probable cause exists is governed by commonsense considerations rather than technical legal rules. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) The court must look to the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *People v. Tisler*, 103 Ill. 2d at 238.) A reviewing court will not disturb a trial court's finding of probable cause unless that finding is manifestly erroneous. The reviewing court's task is merely to ensure that there was a substantial basis for the trial court to conclude that probable cause existed. *People v. Tisler*, 103 Ill. 2d at 248.

■ McClaurin's testimony as to the physical description he gave Detective Higgins contradicted Detective Higgins' testimony in that the height and weight were different. It is less clear that McClaurin's testimony that he did not tell police that Steve Zinnamon's brother shot him conflicts with Detective Higgins' testimony that McClaurin *believed* he was shot by Steve Zinnamon's brother. However, even if such testimony could be construed as directly contradicting Detective Higgins' testimony, that did not necessitate a finding that no probable cause existed. The trial judge heard the testimony of two other witnesses who gave Detective Higgins descriptions of the offender and the automobile. He also heard Detective Higgins' own testimony.

The trial judge's function in making a probable cause determination is to weigh the testimony, assess the credibility of the witnesses, and draw reasonable inferences from the testimony. (*People v. Reynolds* (1981), 101 Ill. App. 3d 576, 579, 428 N.E.2d 694, *aff'd* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) The judge was not required to believe McClaurin's testimony and disbelieve the testimony of Detective Higgins, Anthony Smith and Victor Davis. The case of *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280, is on point. In that case, police officers testified at a pretrial hearing regarding an informant's tip.

The informant's testimony at the hearing repudiated most of the police officers' testimony. (*People v. Clay*, 55 Ill. 2d at 503-04.) Our supreme court stated that it found no reason to disturb the trial court's finding that probable cause existed, the court having apparently resolved the conflicting testimony and having found the police officers' testimony more credible. *People v. Clay*, 55 Ill. 2d at 504.

The trial court in the present case apparently found the testimony of other witnesses to be more credible than that of the victim, at least as that testimony pertained to the description given to police after the shooting. Defendant fit the description which the other witnesses gave. Defendant also owned a car fitting the description given by two witnesses. It was not against the manifest weight of the evidence for the trial judge, in considering the totality of the circumstances, to conclude that the police had probable cause to arrest defendant.

■ Defendant's second contention is that he was denied effective assistance of counsel when his attorney failed to present his theory of the case because the attorney misunderstood the court's ruling regarding evidence of drug sales by the victim. Defendant contends that Steve Zinnamon owed money to McClaurin in connection with a drug purchase and McClaurin stole Steve Zinnamon's motorcycle as payment for the debt. Defendant contends that, after the shooting, McClaurin threatened to implicate defendant if he did not pay his brother's debt. Defendant argues that because his attorney mistakenly believed that the court ruled against presenting any evidence on this theory, defendant was deprived of a fair trial.

In evaluating ineffective assistance of counsel claims, Illinois has adopted the two-part test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh'g denied* (1984), 467 U.S. 1267, 82 L. Ed. 2d 864, 104 S. Ct. 3562. (*People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Under that test, the defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that his counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial." (*People v. Hillenbrand* (1988), 121 Ill. 2d 537, 548, 521 N.E.2d 900.) The burden is on the defendant to establish that both requirements have been met. *People v. Stewart* (1984), 101 Ill. 2d 470, 492, 463 N.E.2d 677.

As to the first requirement, there is a strong presumption that counsel's performance was within a wide range of reasonable professional assistance. (*Strickland v. Washington*, 466 U.S. at 689,

80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Chandler* (1989), 129 Ill. 2d 233, 242-43, 543 N.E.2d 1290.) Regarding the second requirement, defendant must affirmatively prove an adverse effect on the defense which undermined the reliability of the result. (*Strickland v. Washington*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.) "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland v. Washington*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.) A verdict which is only weakly supported by the record is more likely to have been affected by errors of counsel than a verdict which is overwhelmingly supported by the record. *Strickland v. Washington*, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In the present case, the evidence of defendant's guilt was overwhelming. Defendant signed a statement in which he admitted shooting McClaurin. The victim identified defendant in a pretrial photo array and later identified him in court. The details in defendant's statement and in the testimony of Robert McClaurin, Anthony Smith, and Victor Davis were substantially the same. Defendant has failed to meet his burden of showing a reasonable probability that, had defense counsel presented evidence of the drug-related debt, the verdict would have been different.

Since we have determined that any prejudice to defendant was insufficient to support defendant's claim of ineffective assistance, we do not address whether counsel's performance actually fell below an objective standard of reasonableness. See *People v. Hillenbrand*, 121 Ill. 2d at 556-57 (where an ineffective assistance of counsel claim fails under the second requirement of the *Strickland v. Washington* test, it is unnecessary to examine whether counsel's representation was, in fact, deficient under the first part of the *Strickland v. Washington* test).

■Finally, defendant contends that the trial court erred in giving defense counsel only two days to review the presentencing investigation report and in denying a continuance so that defense counsel could prepare for the sentencing hearing. Defendant notes that the Unified Code of Corrections requires that a presentence investigation report must be open for inspection by defendant's attorney at least three days prior to sentencing, unless defendant waives that requirement. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—4(b)(2).) However, while the report must be available three days beforehand, the statute does not require that the report actually be tendered to defense counsel three days before sentencing. (*People v. Stewart*, 101 Ill. 2d at 491 (report certified on August 5 and tendered to counsel on

August 6 complied with the statute where sentencing occurred on August 8).) It appears from the May 31, 1990, date under the stenographic designation on the report that, as the State maintains, the report was available more than three days prior to sentencing on June 8, 1990.

More importantly, defendant has not shown any prejudice caused either by the fact that counsel did not actually receive the report at least three days before sentencing or by the fact that the trial judge denied defendant's request for a continuance. A reviewing court will not set aside a sentence absent a showing of actual prejudice from an error. (*People v. Collins* (1985), 106 Ill. 2d 237, 281, 478 N.E.2d 267 (failure to give counsel time to investigate charges pending in Arizona was not prejudicial where defendant was convicted of those crimes); *People v. Spurlark* (1978), 67 Ill. App. 3d 186, 203-04, 384 N.E. 2d 767 (denial of continuance not prejudicial where defendant fully presented mitigating factors and failed on appeal to identify any incomplete or incorrect items in the presentence report).) Furthermore, the grant or denial of a continuance is within the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion. *People v. Collins*, 106 Ill. 2d at 281.

After the recess on June 8, defendant's counsel pointed out to the trial judge several corrections in the presentence report. On appeal, he notes no errors which were not brought to the judge's attention. Defendant called several witnesses in mitigation at the sentencing hearing. A stipulation was presented as to one witness who was not available that afternoon. On appeal, defendant has not named any other witnesses who would have testified had a continuance been granted. Defendant has shown no reason to conclude that the trial court abused its discretion in denying his motion for a continuance or that defendant was prejudiced by the denial of that motion.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.