THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY A. REYNOLDS *et al.*, Defendants-Appellees.

Second District No. 80-956

Opinion filed November 13, 1981.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

Robert K. Kilander, of Laraia and Kilander, of Wheaton, and Stephen J. Civinelli, of Civinelli, Bakalia and Culliton, of Bloomingdale, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

On November 25, 1979, the defendants were arrested and charged with theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)), burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)), and possession of burglary tools (Ill. Rev. Stat. 1977, ch. 38, par. 19—2(a)). In March of 1980, the trial court granted the defendants' motion to quash the arrest and suppress the evidence seized at the time of the arrest. The State appeals from the granting of the motion to suppress.

At the hearing on the motion to suppress, the defendants called Officer Glugla of the Hanover Park Police Department. Officer Glugla testified to the following. On November 25, 1979, at approximately 11:15 p.m., he observed a station wagon pulling a trailer which, to the best of his recollection, was about 10 feet long and 4½ feet tall. Because the trailer's taillights were not operating, he stopped the vehicle. After he stopped the vehicle, he approached it from behind the trailer. The open trailer was covered with a tarpaulin, which did not completely cover the back end of the trailer. From this perspective, he determined that the trailer contained several cartons with the word "MAGNAVOX" printed on the sides of the cartons.

The officer then testified that he approached the driver and informed him of the taillight violation. The driver, the defendant Reynolds, then told the officer that they were lost, and that he could not remember to what street address he was going. The officer tried to help him remember by suggesting several street names.

The officer asked the occupants of the car, the defendants, Wright and Reynolds, and a third person, Norman, where they had acquired the equipment in the trailer. The responses differed. The officer asked the defendants if they had a bill of lading on the merchandise. They indicated that they did not.

The officer also asked the identification of all of the occupants. He then ran a radio check on the occupants as well as the station wagon and trailer. The officer learned that there were no warrants on the occupants and that the station wagon was registered to a Mr. Norman and the trailer was registered to a Peckins TV store in Roselle. The officer then requested the Roselle Police Department to do a security check on Peckins TV. While the officer was making these checks, he was standing near the trailer and could again observe the boxes. Because it was a windy, rainy evening, the tarpaulin flapped in the wind and further exposed the contents of the trailer. The Roselle Police Department then radioed the officer and told him that Peckins TV store was secure.

The officer testified that he then asked the defendants to follow him to the police station. When he made this request, he did not tell the defendants that they were under arrest. He did testify, however, that if the driver had decided not to follow him, the officer would have stopped the vehicle again because of the unlit trailer.

The defendants did follow the officer to the Hanover Park Police Station. Another police vehicle followed directly behind them. Fifteen to twenty minutes later, a Mr. Peckins from Peckins TV store arrived at the station. Mr. Peckins indicated that the trailer and the televisions inside the trailer belonged to his store, and that the defendants did not have permission to possess them. At that time, and with Mr. Peckins' approval, the trailer was searched. The search revealed several television sets and burglary tools.

The officer admitted that he had never mentioned the taillight violation at the preliminary hearing, even though at that hearing he responded in the affirmative to defense counsel's question as to whether he had related all the conversation that occurred between himself and the defendants. The officer also testified that eventually a traffic citation did issue on the taillight violation.

After the hearing and arguments on the motion, the court found that the defendants were illegally arrested and detained when the officer directed the defendants to follow him to the police station. The court found that this arrest was performed without probable cause. Thus, the trailer and its contents were determined by the court to be the fruit of the illegal arrest and seizure, and the motion to suppress was granted.

■■ ■ The test to determine whether an arrest occurred is whether a reasonable, innocent person in the same circumstances would have considered himself arrested. (*People v. Gale* (1979), 72 Ill. App. 3d 23, 26.) A person is arrested when there has been a restriction of his freedom of movement, or a restraint of his person. *People v. Jacobs* (1979), 67 Ill. App. 3d 447, 449.

Here, the evidence indicates that the uniformed police officer

detained the youths for a period of time. During that time they were asked numerous questions. Eventually, the officer "requested" that they follow him to the police station. Earlier the officer had called for the assistance of an additional unit. On the journey to the police station, the defendants' vehicle was bracketed between two police vehicles.

The trial court found that these actions constituted an arrest of the defendants. At a hearing on a motion to suppress, it is the function of the trial court to weigh the testimony, to assess the credibility of the witnesses, and to draw reasonable inferences from their testimony. (*People v. Brown* (1980), 81 Ill. App. 3d 271, 274; see also *People v. Akis* (1976), 63 Ill. 2d 296, 298.) Once the trial court has ruled on the motion to suppress, a reviewing court will not disturb that order unless it is manifestly erroneous. (*People v. Brown* (1980), 81 Ill. App. 3d 271, 274.) We cannot say that the trial court's finding that an arrest occurred is manifestly erroneous.

Similarly, the trial court's finding that the officer did not have probable cause to arrest the defendants is not against the manifest weight of the evidence. While at the time of the initial traffic stop, there were certain circumstances which would have given Officer Glugla an "articulable suspicion" that criminal activity was afoot, such circumstances only justify a temporary detention of the defendant in order to investigate. (See *People v. McGowan* (1977), 69 Ill. 2d 73.) In this case, as a result of the officer's investigation, he learned that Peckins TV store was secure. This information negated the incriminating nature of most of the unusual circumstances present in this case. The trial court did not err in finding that the officer did not have probable cause to arrest, and in suppressing the fruit of that illegal arrest.

The State, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, contends that because the defendants did not own the trailer in which the seized goods were found, the defendants lack standing to assert any fourth amendment rights under the Federal Constitution. The State's reliance upon *Rakas* is misplaced.

In *Rakas*, the defendants attempted to assert that their right of privacy under the fourth amendment had been violated when the police searched the vehicle in which they had been riding. The vehicle was not owned by either of the defendants. In *Rakas* there was no claim that the police did not have cause to stop the vehicle in which the defendants had been riding or that, prior to the search, they had been illegally arrested. Under such circumstances, the United States Supreme Court held that they did not have standing to assert that their personal right of privacy had been violated by the search of a third person's property.

In the instant case, the defendants are not claiming a privacy right in another person's property, rather they are asserting a violation of their

basic fourth amendment right to be free from unreasonable seizures of their persons. This basic right has long been recognized and the evidence obtained as a direct result thereof must be suppressed as the fruit of the poisonous tree. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *People v. Myles* (1978), 62 Ill. App. 3d 931, 934.

The motion to suppress was properly granted.

Affirmed.

SEIDENFELD, P. J., and LINDBERG, J., concur.