THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL JACKSON, Defendant-Appellee.

First District (5th Division) No. 85—2295

Opinion filed October 24, 1986.

PINCHAM, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Dean P. Karlos, and Marguerite Quinn, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The defendant, Michael Jackson, was charged by information with the offense of possession of a controlled substance. (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b).) Prior to trial, defendant made a motion to suppress the cocaine seized by the arresting officers alleging that it was illegally obtained. After a hearing on this motion, the trial court granted it. The State appeals,[1] contending that the trial court erred when it suppressed the cocaine taken from defendant's person where the defendant voluntarily accompanied the arresting officer to his squad car and thereafter brought the evidence into plain view of that officer, who then properly seized the evidence and placed defendant under arrest. 87 Ill. 2d R. 604(a)(1).

The following facts were adduced at the hearing on defendant's motion to suppress evidence. At approximately 6:15 p.m. on September 16, 1984, Chicago police officers Tanderic, Wilandiz and Detective Carone received information from their supervising sergeant that a man named Marshall Redman was in the area of 58th Street and Indiana Avenue in Chicago in a black and red Ford. The sergeant informed these officers that Redman was suspected of possessing 250 bags of cocaine in his vehicle. When the officers arrived at the aforementioned location, they saw a group of approximately 10 men standing on the corner. At that time, Detective Carone recognized defendant, who was a member of that group, since he had previously stopped and arrested defendant in connection with an unrelated controlled-substance charge. Detective Carone then exited his vehicle, walked up to the group and stated to defendant, "Michael, I would like to talk to you." Detective Carone testified that, at that time, he wanted to privately inquire of defendant whether Marshall Redman was in the vicinity. In response, defendant followed Carone to the squad car, which was approximately 15 feet away. Approximately 5 feet from the squad car, defendant took a clear plastic bag containing white powder from his pocket and put it in his mouth. While he was attempting to swallow that plastic bag, Detective Carone took defendant by the coat and told him to spit it out, and defendant did so. Defendant was then placed under arrest. Defendant did not testify at the hearing on his motion to suppress. After hearing the testimony of Detective Carone and the closing arguments by counsel, the trial court granted defendant's motion to suppress. The court stated:

---

[1]Defendant has not filed a brief in this matter; however, we will consider the merit of the State's contention. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

"[I]t is the Court's view that the actions of the Officer and looking through it and, I think, as a reasonable person would, and certainly, at least it is my opinion that Mr. Jackson, who at the direction or request of the Officer, in my mind, [it] is a seizure within the confines and the meaning of the Fourth Amendment of the United States Constitution and the Constitution of the State of Illinois and it is my view that that seizure was without probable cause and it is my view further that anything stemming from the seizure thereafter was without probable cause, fruits of a poisonous tree and for that reason, I am sustaining the motion to suppress."

■■ The assumption that an individual is required to cooperate with the police cannot be equated with an arrest since every citizen has a duty to assist police officers up to the point of self-incrimination. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 167, 368 N.E.2d 870.) Both the Federal courts and the Illinois Supreme Court have held that the intent of the officer and the understanding of the arrestee are two essential elements in the definition of an arrest. (68 Ill. 2d 158, 165, 368 N.E.2d 870.) The standard is not what the defendant thought, nor is it what a reasonable person would think. Rather the standard is what a reasonable man innocent of any crime would have thought had he been in the defendant's position. (*People v. Reed* (1982), 104 Ill. App. 3d 331, 488 N.E.2d 979.) The trier of fact, when applying this standard, must also consider the surrounding circumstances of the incident in question. *People v. Wipfler* (1977), 68 Ill. 2d 158, 167-68, 368 N.E.2d 870.

■■ Detective Carone stated that he knew defendant from a prior arrest and that that arrest involved another controlled-substance charge. When Detective Carone approached the group, he asked defendant if he might speak with him privately. Defendant then voluntarily followed the detective away from the group in order to speak with him. It is evident that at that time Detective Carone had not given the defendant any indication that he was under arrest, nor had he restrained defendant's movements in any manner. The only testimony heard by the trial court disclosed that the detective's intent was merely to ask defendant as to the whereabouts of another suspect. There is no evidence in the record indicating that a reasonable man, innocent of any crime, would have thought that he was under arrest. It was not until Detective Carone and defendant were walking to the squad car that the defendant gave the officer probable cause to arrest him. The only inference that can be adduced from the only testimony the trial court heard is that defendant panicked because he was in

possession of a controlled substance. Because of this, he then attempted to conceal it from Detective Carone. When defendant pulled the clear plastic bag containing a white powder from his pocket and attempted to swallow it, given Detective Carone's 17 years' experience and his knowledge of defendant's previous involvement with controlled substances, he had probable cause to arrest defendant.

■■ ■ When defendant removed the clear plastic bag with the white powder from the his pocket, it is apparent that that object was in plain view of the officer. It is well established that objects in the plain view of a peace officer, who has a right to be in the position to have that view, are subject to seizure and may be introduced into evidence. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity. *Payton v. New York* (1980), 445 U.S. 573, 587, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.

Defendant voluntarily placed the plastic bag, containing the cocaine, in plain view of Detective Carone. The detective then properly seized that evidence and arrested him.

For the reasons stated above, the circuit court's order, granting defendant's motion to suppress evidence, is reversed and the cause is remanded to the circuit court for further proceedings.

Order reversed, cause remanded.

SULLIVAN, P.J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. The trial court found that Chicago police officer Carone violated the defendant's right against unreasonable search and seizure as guaranteed by the fourth amendment to the Constitution of the United States and article I, section 7, of the Constitution of the State of Illinois. That finding was correct and should not be disturbed.

Carone testified at the hearing of the defendant's motion to suppress that on September 16, 1984, at about 6:15 in the evening, the sergeant in his unit "received a call that a subject by the name of Marshall Redmond was in the area of 58th and Indiana in a red and black Ford with 250 bags of coke on him." Carone knew Marshall Redmond by sight. Carone and Officers Tandaric and Wilandiz went to 58th and Indiana in a police squad car. Carone saw the defendant and approximately 10 other men standing on the corner. Carone told the officers in the squad car to stop because he wanted to talk to

Jackson. The squad car pulled over to the curb. Carone got out of the squad car and walked over to Jackson. Carone testified:

"Q. And you said, 'Michael, I would like to talk to you,' and he said, 'Okay?'

A. Yes.

Q. And you said, 'Come with me to the squad car?'

A. I believe I said that, yes sir."

Carone testified further that Jackson knew he was a police officer because Carone and his partner, Officer O'Neil, "had stopped [Jackson] in a vehicle and went through the car," and that on August 19, 1983, Carone and O'Neil arrested Jackson in his apartment on 25th Street and charged him with possession of controlled substance.

Carone stated that he wanted to ask Jackson if he had seen Marshall Redmond on the street and that he decided to go back to the squad car and ask him so that the conversation would be private. The record does not establish that Carone revealed to Jackson why Carone wanted to talk to Jackson or why Carone ordered Jackson to accompany him to the squad car. Jackson complied with Carone's command to go to the squad car. En route to the squad car Jackson put a package containing white powder in his mouth. Carone grabbed Jackson by his neck and forced the package from Jackson's mouth. The package and its contents of white powder were the subject of Jackson's motion to suppress which the trial court granted.

The State's contention on this appeal assumes the very question that was decided against the State by the trial court. The State contends:

"[T]he trial court erred when it suppressed the cocaine taken from the defendant's person *where the defendant voluntarily accompanied the arresting officer to his squad car* and thereafter brought the evidence into plain view of that officer who then properly seized the evidence and placed defendant under arrest." (Emphasis added.)

The trial court found that the defendant did not *voluntarily accompany* the arresting officer to his squad car. The trial court found:

"[I]t is the Court's view that the actions of the Officer and looking through it and, I think, as a reasonable person would, and certainly, at least *it is my opinion that Mr. Jackson, who at the direction or request of the Officer, in my mind, is a seizure within the confines and the meaning of the Fourth Amendment of the United States Constitution and the Constitution of the State of Illinois and it is my view that that seizure was without probable cause* and it is my view further that any-

thing stemming from the seizure thereafter was without probable cause, fruits of a poisonous tree and for that reason, I am sustaining the motion to suppress." (Emphasis added.)

In *Brown v. Texas* (1979), 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637, the defendant was convicted under a Texas statute which made it a crime for a person to refuse to give his name and address to a police officer who had stopped the person and requested such information because the defendant refused to give the requested information. The Supreme Court reversed, holding:

"The Fourth Amendment, of course, 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. [Citations.] *"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person,"* [citation], and the Fourth Amendment requires that the seizure be "reasonable." ' [Citation.]" (Emphasis added.) 443 U.S. 47, 50, 61 L. Ed. 2d 357, 361, 99 S. Ct. 2637, 2640.

In *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, this court condemned a Federal drug agent's stop of an alleged drug-profile defendant who arrived on an airline flight from a drug-source city. The court held:

"A seizure occurs whenever a police officer accosts an individual and restrains his freedom to walk away. [Citation.] 'Seizure' does not require physical restraint *per se*. If it is apparent from the circumstances that an individual is not free to ignore the officer and walk away, a seizure has occurred triggering fourth amendment protection. [Citation.]" 113 Ill. App. 3d 501, 504, 447 N.E.2d 858.

In *People v. Reynolds* (1981), 101 Ill. App. 3d 576, 578-79, 428 N.E.2d 694, this court held:

"A person is arrested when there has been a restriction of his freedom of movement, or a restraint of his person. [Citation.]
* * *

* * * At a hearing on a motion to suppress, it is the function of the trial court to weigh the testimony, to assess the credibility of the witnesses, and to draw reasonable inference from their testimony. [Citations.] Once the trial court has ruled on the motion to suppress, a reviewing court will not disturb that order unless it is manifestly erroneous. [Citation.] We cannot say that the trial court's finding that an arrest occurred is manifestly erroneous."

In the case at bar, it cannot be said, and indeed the majority does

not say, that the trial court's finding was manifestly erroneous.

Whether Officer Carone effectuated an arrest of the defendant when he drove up in the police squad car, exited, walked over, singled out the defendant standing with a group of men, and said to him, "Michael I would like to talk to you" and then commanded him to "come with me to the squad car," which the defendant did by going to the squad car, must be determined from the facts and the defendant's mental state influenced by his past experiences with Officer Carone. On another occasion Carone had stopped the defendant and searched his car, and had previously arrested the defendant in his apartment and charged him with the unlawful possession of a controlled substance (drugs).

Carone did not tell the defendant why he wanted to talk to him or what he wanted to discuss. There was no evidence that the defendant knew or was acquainted with Marshall Redmond, nor was there any evidence that Carone had any basis for believing that the defendant knew Marshall Redmond or if he did, that he would impart any information he had about Redmond to Carone. It requires no imagination to accurately speculate what would have happened to the defendant or what action Carone would have taken against the defendant had the defendant intimated even a slight reluctance to comply with Carone's command to "come with me to the squad car."

Because Carone had previously stopped the defendant and searched his car, had arrested the defendant in his home and had charged him with unlawful possession of drugs, when Carone drove up, got out of the squad car, selected the defendant from among the group of 10 men as the person to whom he desired to speak, and then directed the defendant to "come with me to the squad car," it is clear that the defendant construed Carone's statement to him as a command from a law-enforcement officer. It is apparent from the defendant's subsequent actions that the defendant did not construe Carone's command as a social request to engage in idle conversation with the officer.

The convincing fact which supports the conclusion that the defendant construed Carone's conduct and remarks as a command and that the defendant thought he was under arrest and would be searched by Carone, was the defendant's efforts to dispose of the drugs by swallowing them. Of course the defendant panicked, as the majority points out, but he panicked because he was under arrest and had incriminating narcotics in his possession which he feared Carone would discover.

Reliance on "the intent of the officer and the understanding of

the arrestee [as] two essential elements in the definition of an arrest," as the majority states, along with the totality of the facts and circumstances substantiates the conclusion that the defendant was under arrest and considered himself to have been so when he tried to swallow the drugs. It was within the province of the trial court to determine the efficacy of Carone's conduct. Carone's testimony supports the trial court's finding, which is not manifestly erroneous. Based on this standard, the defendant was under arrest when he was commanded by Carone to "come with me to the squad car." This is true even if, as the majority states, the standard for determining if an arrest of the defendant had been effectuated is "what the defendant thought," "what a reasonable person would think," or "what a reasonable man *innocent of any crime* would have thought had he been in the defendant's position." It is impossible to determine what a reasonable man *innocent of any crime* would have thought had he been in defendant's position simply because the defendant was not in a position *innocent of any crime*. The defendant unlawfully possessed drugs.

The majority's reliance on *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870, as authority for invalidating the trial court's finding that the defendant was illegally arrested is ill-founded. The supreme court stated in *Wipfler* that "the beliefs of the individual arrestee, to the extent that they can actually be ascertained, are legitimate considerations" in determining whether that individual had been arrested. (68 Ill. 2d 158, 166, 368 N.E.2d 870.) In the case at bar the beliefs of the arrestee are manifest. He complied with Carone's command and immediately endeavored to destroy the incriminating drugs he believed Carone would discover.

Moreover, *Wipfler* is not remotely analogous to the instant case. In *Wipfler*, the investigating officers had seen motorcycle tracks near a burglarized house. The officers were told by an occupant of an adjoining residence that he had seen the defendant riding his motorcycle in the vicinity of the burglarized premises and that if they wanted information about the burglary the officers should contact the defendant. The officers told the defendant's mother that they wished to talk to the defendant about the burglaries. The defendant's mother assured the officers that she would have the defendant come to the police station after school. The defendant did so and briefly spoke to the police chief who had been a "father image" to the defendant since the death of the defendant's father. The defendant was taken into an office and questioned. He initially denied involvement in the burglaries although he admitted he knew about them. Eventually the defendant

stated that he would tell the truth, at which point he was given his *Miranda* warnings. He confessed and took the officers to his home and surrendered the burglary loot to them. The trial court denied the defendant's motion to suppress his confession. The supreme court affirmed, stating:

> "The position of the State is that no illegal arrest occurred because defendant was in fact not arrested until after he agreed to tell the truth and not at any earlier point in his interrogation. We agree with the position taken by the State.
>
> * * *
>
> In the case at bar, the trial judge made the finding that defendant was not under arrest when his interrogation began. We believe that there is sufficient evidence in the record to support this finding * * *. * * * Defendant went to the station voluntarily. He was aware that the police had tried to reach him that morning, knew where he was all day, but did not attempt to take him into custody. He was informed that the police wanted only to ask him questions about some burglaries. * * * [T]his did not amount to arrest, in light of the total lack of compulsion by the police either in obtaining or retaining his presence at the station. * * *
>
> * * * [T]he manner in which defendant's presence was obtained, and the information the police had about defendant prior to interrogation, lends credence to the testimony of Officer Mahoney that defendant was not, in Mahoney's mind, under arrest at the time and that he could have left without police permission because there was 'nothing to hold him for.'
>
> In summary, then, there is ample evidence to sustain the finding of the trial court that no arrest occurred when defendant entered the interrogation room." 68 Ill. 2d 158, 165-68, 368 N.E.2d 870.

In the case at bar, the defendant did not voluntarily leave the company of the nine men and go to the squad car, nor did he voluntarily surrender the drugs to the officer. *Wipfler* therefore is not on point.

*Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, on which the majority also relies, is not comparable to the case at bar. In *Hicks*, Hicks reported to the police that her boyfriend, with whom she lived, had been stabbed in the chest and jaw. She told the officers that her boyfriend told her that his injuries were inflicted by robbers while he was en route home from work. The officers found the boyfriend in bed mortally wounded. Hicks was taken to the police station

to give a statement as a witness and not as a suspect. The statement that Hicks gave in the police station was the same as what she had told the officers in her home. When she expressed a reluctance to sign the statement, the officer offered her a phone to call a lawyer and assured her that the lawyer would tell her that she was only a witness and that her statement was what she knew about her boyfriend's death. Hicks signed the statement and the officer offered to provide her a ride home when a driver became available. While they waited and in the midst of their conversation about a church which defendant had attended the previous evening, Hicks stated to the officer, "Well, I might as well tell you, I stabbed him." In overruling her motion to suppress this statement, the trial court found that Hicks had not been under compulsion but had voluntarily gone to the police station, that the inquiries of the interrogating officer were of a general nature, were not directed at her and were not focused upon her as a suspect. The court of appeals stated:

> "We hold there was ample evidence to sustain the District Court finding and conclusion that no arrest occurred when [the] Appellant was taken to Police headquarters to secure a written statement from her as a material witness in a homicide case." 382 F.2d 158, 161.

*Hicks* is not on point.

The statement taken by the majority from *Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, 161, that "an assumption that one is required to cooperate with the police can hardly be equated with an arrest; every citizen has a duty to assist police officers up to the point of self incrimination" is not supported by the citation of any authority and is unpersuasive. It is not necessary to decide whether the defendant had such a duty "to assist police officers." There is no evidence that this defendant knew of any such duty or that he was executing any such duty when he complied with Officer Carone's command. Even if he was, his arrest was not validated by such a duty.

I cannot agree with the conclusion inherent in the majority's opinion that the defendant's submission to Carone's command should be construed, to the defendant's detriment, as a waiver of his constitutional right against unreasonable search and seizure. The construction given by the majority to the defendant's compliance with Carone's command encourages citizens to disobey, disregard and indeed disrespect the commands of law-enforcement officers. This is certainly undesired. I would affirm the trial court's finding that the defendant's arrest was unlawful and its order which suppressed the seized drugs as evidence.