THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN BILLINGSLEA, Defendant-Appellant.

First District (3rd Division)    No. 1—94—2555

Opinion filed September 30, 1997.

LEAVITT, J., dissenting.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine L. Kornak, and Frank Kostouros, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

John Billingslea was convicted after a bench trial of unlawful use of a weapon, failure to possess a firearm owner's identification card and failure to produce evidence of firearm registration. He was

sentenced to one year of probation. He argues on appeal that the trial court erred in denying his motion to quash arrest and suppress evidence. We affirm.

At a hearing on defendant's motion to quash arrest and suppress evidence, Chicago police officer Alvin Campbell testified that on January 8, 1994, at 11:40 p.m., he and his partner, Officer Merritt, were on routine patrol in a marked police car. As they approached 10659 South Champaign Street, Campbell saw defendant and two other men talking to the occupants of a parked car. Defendant was on the passenger side of the car and the two others were standing on the driver's side. The officers stopped their car because they were in a "high narcotics area" and defendant "had just left the car [and] possibly *** could have had narcotics." Campbell did not have a warrant for defendant's arrest, nor did he witness transactions between defendant's group and the occupants of the car.

Campbell testified that as he and Merritt got out of their squad car, the other vehicle drove away. Defendant and the other two men then approached the officers. Merritt asked defendant's companions, "Why don't you guys come over here[?]" Simultaneously, Campbell asked defendant to come toward him. Defendant was no more than 15 feet away when Campbell called to him. As defendant approached, Campbell observed that defendant was wearing a coat that was open and his hands were in his pockets. Campbell "saw a bundle" in defendant's waistband. Campbell told defendant: "keep [your] hands where I [can] see them."

After taking a couple of steps in Campbell's direction, defendant turned slightly and took an "evasive step" away from Campbell. Defendant was then five to six feet away from Campbell. Campbell moved in front of defendant to block his path. Campbell explained that he did this to position himself so that he could catch defendant if he attempted to flee.

As Campbell moved in front of defendant to counter his evasive step, he twice told defendant to "come here." Instead, defendant turned his back to the officer, removed an object from his waistband and threw it to the ground. Defendant then attempted to kick snow over the object he had tossed. When Campbell recovered the object from the snow, he saw that it was a .38-caliber handgun. While Campbell dealt with defendant, Merritt conducted a search of defendant's companions, during which she told them to "grab the car."

The trial court denied defendant's motion to quash arrest and suppress evidence, reasoning that Campbell's conduct in calling defendant over to his vehicle did not amount to a "stop" under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Further, the

trial judge reasoned that when defendant turned from the officer and threw the gun to the ground, he lost his right to privacy, as well as standing to contest the seizure of the weapon, because he had abandoned the weapon and it was in plain view on the ground. The trial judge did not address whether a seizure occurred when Campbell moved to block defendant.

■ Generally, we will not disturb a trial court's ruling on a motion to suppress unless it is manifestly erroneous. *People v. James*, 163 Ill. 2d 302, 645 N.E.2d 195 (1994). But where, as here, neither the facts nor credibility of witnesses is disputed, we may review the ruling *de novo*. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310 (1996).

■ A law enforcement officer does not violate the fourth amendment's guarantee against unreasonable search and seizure by approaching a person and questioning him. *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983). But when a person's freedom of movement is restrained by physical force or a show of authority, he is seized within the meaning of the fourth amendment. *United States v. Mendenhall*, 446 U.S. 544, 553-54, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). A show of authority amounts to a seizure when a reasonable person in the same circumstances would not feel free to " 'go about his business.' " *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting *California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1552 (1991).

Defendant does not dispute that he voluntarily walked toward Campbell. At that point, the encounter was consensual and he was not seized. He argues that the confrontation escalated to a seizure when Campbell, without sufficient articulable facts to justify a *Terry* stop, told defendant to "come here" as he blocked defendant's path in response to defendant's evasive step.

The State argues that defendant was not seized until after he threw the weapon down and, at that point, defendant had abandoned the gun. The State argues that nothing Campbell did before defendant threw the gun down "could be construed as a show or threat of force, and the officer did not confine or restrain defendant in any way."

The State relies on *People v. Jackson*, 149 Ill. App. 3d 156, 500 N.E.2d 537 (1986), and *People v. Tilden*, 70 Ill. App. 3d 859, 388 N.E.2d 1046 (1979), to support its contention that there was no seizure of defendant before he tossed the gun. In *Jackson*, the defendant voluntarily followed an officer to his car after the officer said, "I would like to talk to you." *Jackson*, 149 Ill. App. 3d at 157. The officer said he

intended to ask the defendant the whereabouts of another suspect. As they walked, the officer saw the defendant put a clear plastic bag containing white powder in his mouth. The court held that the defendant was not seized because there was no indication that the officer intended to arrest or restrain the defendant. *Jackson*, 149 Ill. App. 3d at 158.

Similarly, in *Tilden*, officers were responding to a report about a suspicious person when they saw the defendant in a nearby alley. As one of the officers approached the defendant, he began to walk away. The officer asked him to return and produce identification. As the defendant searched his pockets, the officer saw a gun in the defendant's waistband. The court held that the defendant had not been seized because the defendant's freedom to walk away had not been hindered by force or threat of force. *Tilden*, 70 Ill. App. 3d at 862.

■ We disagree with the State's assertion that Campbell's action lacked a show of force before defendant threw the gun to the ground. Unlike the officers in *Jackson* and *Tilden*, the officer here did more than ask for voluntary cooperation. We believe Campbell's action in stepping to block defendant while telling him to "come here" was a show of force indicating Campbell's intent to restrain defendant. Campbell's testimony confirmed that he intended to block defendant if he tried to flee. But that is not the end of our analysis.

While an officer's show of authority may amount to a seizure (see *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386), we have held that a defendant is not seized when he ignores a show of authority. See *People v. Ramirez*, 244 Ill. App. 3d 136, 145, 613 N.E.2d 1116 (1993), citing *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991). In *People v. Ramirez*, the defendant fled from officers who had ordered him to halt. As he fled, he dropped a brown paper bag that contained cocaine. We held that the defendant was not seized within the meaning of the fourth amendment because there had been neither the application of physical force with lawful authority nor submission to the assertion of authority. *Ramirez*, 244 Ill. App. 3d at 145. We found that the bag had been abandoned, and we held that defendant's motion to exclude the evidence was properly denied.

This case is similar to *Ramirez*. While Campbell asserted authority when he blocked defendant, ordered him to "come here," and ordered him to keep his hands where he could see them, defendant chose not to submit. Instead, he turned away, reached for an object in his waistband, and threw it to the ground. At that moment, defendant was not detained by physical force and did not submit to the assertion of authority. Campbell's recovery of the gun did not result from a search or seizure of defendant.

■ The record further establishes that Campbell had sufficient articulable facts to justify a *Terry* stop before he tried to detain defendant. An officer may lawfully detain a person to conduct a brief and limited investigation of possible criminal activity where there are articulable facts and rational inferences that lead the officer to a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *People v. Zamora*, 203 Ill. App. 3d 102, 106-07, 560 N.E.2d 1053 (1990).

When Campbell originally saw defendant, Campbell knew that defendant was near an occupied car in a "high narcotics area." If this was all Campbell knew before he tried to detain defendant, his "hunch" would not have justified his intrusion. See *People v. Hunt*, 188 Ill. App. 3d 359, 362, 544 N.E.2d 118 (1989) (knowledge of past criminal activity in an area alone did not justify stop). But Campbell made several other relevant observations before attempting to stop defendant.

Campbell testified that, as defendant began to walk toward the officers, he saw that defendant was wearing an open coat and that there was "a bundle" or "bulge" at his waistband. Defendant also had his hands in his pockets. Campbell then ordered defendant to keep his hands where Campbell could see them. Defendant altered his course and took an evasive step away. These articulable facts, coupled with Campbell's knowledge that he was in a high crime area, gave him reason to block defendant.

An investigatory stop is proper when the articulable facts, together with natural inferences, make the intrusion reasonable. *People v. Scott*, 148 Ill. 2d 479, 503, 594 N.E.2d 217 (1992), quoting *People v. Smithers*, 83 Ill. 2d 430, 436 (1980); *People v. McGowan*, 69 Ill. 2d 73, 78 (1977). We believe a reasonable officer in Campbell's position would be alerted to the possibility of criminal activity and that the better part of wisdom compelled Campbell's minimal intrusion of blocking defendant's path to detain defendant long enough to investigate.

Affirmed.

COUSINS, P.J., concurs.

JUSTICE LEAVITT, dissenting:

I agree with the majority that Officer Campbell's actions in this case amounted to a show of force, contrary to the State's position. However, I believe defendant's response to Campbell's assertion of authority constituted a submission to that authority and that defen-

dant was thereby seized within the meaning of the fourth amendment. I also disagree with the majority's finding that, prior to the alleged seizure, Campbell had sufficient grounds to justify a *Terry* stop of defendant. Thus, I respectfully dissent.

As the majority correctly points out, "a defendant is not seized when he ignores a show of authority." 292 Ill. App. 3d at 1030. See *People v. Perez*, 249 Ill. App. 3d 912, 916, 619 N.E.2d 887 (1993) (activation of police lights on squad car did not constitute a seizure, as seizure did not occur until defendants yielded to officer in pursuit); *Ramirez*, 244 Ill. App. 3d at 145. The seizure of an individual "requires *either* physical force *** *or*, where that is absent, *submission* to the assertion of authority." (Emphasis in original.) *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1551. The question then becomes, in the absence of any physical force applied to defendant, whether he submitted to Officer Campbell's assertion of authority. I would find that he did.

The determinative testimony by Officer Campbell, elicited on cross-examination, was as follows:

"Q. When you said in your arrest report, when you asked the defendant to come towards you, he refused, is that correct?

A. Correct.

Q. Explain to the court what you mean—what period of time are you referring to that he refused to come towards you?

A. Those few seconds I said 'Come over here' at that time Mr. Billingslea originally took an evasive step. I walked to block his path, and said, 'come here'. I repeated it again and at that time, he turned around and turned his back and threw the object."

I disagree with the majority's assertion that *Ramirez* controls the present case. Based on the officer's own account, defendant clearly did not flee when confronted with Campbell's show of authority. That fact alone distinguishes the present case from *Ramirez*, as well as the United States Supreme Court's decision in *Hodari D.*, relied upon by this court in *Ramirez*. In both those cases, the defendants fled when first confronted by police officers.

In contrast to the immediate and unhesitating flight of the defendants in *Ramirez* and *Hodari D.*, defendant in this case remained in the place where he was instructed to stop and was subsequently restrained by Officer Campbell. Defendant was approximately 15 feet from Campbell when Campbell asked him to approach him. Defendant continued towards Campbell, in obeyance of his order, until he was in very close proximity (five to six feet) of the officer. At this point, defendant—arguably "seized" already—decided to exercise his right to walk away. In response, the officer blocked

defendant's path, ordering him to "come here, come here." He testi- fied that he did so to stop the defendant were he to run. Physical contact is not required to effectuate a seizure. *Hodari D.*, 499 U.S. at 626-27, 113 L. Ed. 2d at 697, 111 S. Ct. at 1551. See also *Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994) (holding that a "crucial element" of a seizure is the "significant, present disruption of the targeted person's freedom of movement" (emphasis omitted)). A refusal to flee or otherwise escape is to be encouraged. See *Hodari D.*, 499 U.S. at 627, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551 (presuming "[o]nly a few [police orders to stop] *** will be without adequate basis"). Under these circumstances, I would find that defendant's freedom of movement was sufficiently restrained such that he was "seized" within the meaning of the fourth amendment. See *United States v. Morgan*, 936 F.2d 1561, 1567 (10th Cir. 1991) (momentary yielding to show of authority sufficient to constitute seizure); *Johnson v. Grob*, 928 F. Supp. 889, 898 (W.D. Mo. 1996) (same). But see *United States v. Lender*, 985 F.2d 151, 154-55 (4th Cir. 1993); *United States v. Holloway*, 962 F.2d 451, 456-58 (5th Cir. 1992).

It is also clear that defendant was not acting " 'voluntarily in a spirit of apparent cooperation with the officer's investigation' " when he submitted to the assertion of authority. (Emphasis omitted.) See *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877, quoting *Sibron v. New York*, 392 U.S. 40, 63, 20 L. Ed. 2d 917, 935, 88 S. Ct. 1889, 1903 (1968). A necessary, but not a sufficient, condition for a seizure is that a reasonable innocent person in the same cir- cumstances as the defendant would not, due to the police conduct, feel free to decline the officer's request or otherwise terminate the encounter. See *Hodari D.*, 499 U.S. at 628, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551; *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386. Hence, it must be determined whether an individual's submission to an assertion of authority was the product of police co- ercion or, rather, manifested a genuine willingness on the citizen's part to cooperate with the officer's investigation; the former case is indicative of a seizure, while in the latter case the encounter remains consensual. See *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 508-09, 100 S. Ct. at 1876-77. *Cf. Jackson*, 149 Ill. App. 3d at 158 (finding no seizure where detective approached defendant, who then voluntarily followed detective away from a group); *Tilden*, 70 Ill. App. 3d at 863 (finding no seizure where, pursuant to officer's request, defendant vol- untarily approached and attempted to produce identification).

Relevant to this inquiry are such factors as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of

language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. In this case a number of these factors support the conclusion that defendant was not submitting "in a spirit of apparent cooperation" with Officer Campbell. Defendant was faced, not with one officer, but two. Although not brandishing their weapons, both were armed and in uniform. See *United States v. Wood*, 981 F.2d 536, 539 (D.C. Cir. 1992) (considering fact that both officers were armed and in full uniform in finding that a reasonable person in defendant's position would not have felt free to ignore the officers). The police conduct in relation to defendant's companions is also relevant. During Officer Campbell's encounter with defendant, Officer Merritt was simultaneously conducting a search of defendant's companions, both of whom had been told to "grab the car." The fact that one's compatriots are forced to assume a position against the squad car while being frisked would not lead a defendant to believe that he was free to move about his business.

Nor did Campbell's manner of address in this case indicate to defendant that he was free to leave. Campbell did not approach defendant at first but, rather, ordered defendant to come to him (keeping in mind, again, that in defendant's presence his two companions were being forced to stop and position themselves against the squad car). See *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877 (considering the fact that the officers did not summon the respondent to their presence in finding that no seizure occurred); *United States v. Jordan*, 958 F.2d 1085, 1087 (D.C. Cir. 1992) ("conversational tones" of officers' speech suggest no seizure occurred). Perhaps most indicative of the coercion present was defendant's failed attempt to bring the encounter to an end. With Campbell five to six feet away, defendant decided to exercise his right to walk away and took a step in another direction, only to be confronted again by Campbell, who then repeated his earlier commands for defendant to come to him. Campbell testified he took this action so as to stop defendant were he to run. While the subjective intent of the officer is relevant only to the extent that the intent has been conveyed to the person confronted (*Michigan v. Chesternut*, 486 U.S. 567, 575 n.7, 100 L. Ed. 2d 565, 573 n.7, 108 S. Ct. 1975, 1980 n.7 (1988); *Mendenhall*, 446 U.S. at 554 n.6, 64 L. Ed. 2d at 509 n.6, 100 S. Ct. at 1877 n.6), defendant in this case was, no doubt, made fully aware of Campbell's intent to restrain him when the officer blocked his path. See *Tilden*, 70 Ill. App. 3d at 863 (where officer merely asked the defendant to approach and produce identification, no seizure occurred since record revealed "no further evidence that defendant's freedom to walk away was in any fashion

overcome by force or threat of force"). In sum, the totality of the circumstances indicates that this was hardly a consensual "benign police/citizen encounter." See *Jordan*, 958 F.2d at 1087.

Other jurisdictions have found lesser restraints on an individual's freedom of movement sufficient to constitute a seizure within the meaning of the fourth amendment. See *United States v. Coggins*, 986 F.2d 651, 654 (3d Cir. 1993) (where the defendant asked to leave but was ordered to remain and then sat back down, he was seized even though he fled soon thereafter); *Wood*, 981 F.2d at 540-41 (finding the defendant had yielded to police authority and was thereby seized where the defendant froze and dropped a gun after being told to "halt right there" by officer); *Morgan*, 936 F.2d at 1566-67 (finding a seizure where the defendant, having been commanded to "hold it right there" and urged not to run, paused momentarily before fleeing); *United States v. Wilson*, 953 F.2d 116, 122-23 (4th Cir. 1991) (where officers followed the defendant through the airport and persisted in asking him questions following his refusal to consent to a search, the defendant was seized despite his continued unimpeded progress towards his destination, since such police persistence in the face of an attempt to terminate an encounter may be the equivalent of physical restraint).

Finally, I disagree with the majority's conclusion Officer Campbell had sufficient articulable facts to justify a *Terry* stop before any seizure of defendant could have occurred. The State originally conceded as much, admitting that "[i]f this was a *Terry* stop, and, therefore, a seizure of defendant's person before defendant threw down the weapon, this would have been improper and the weapon should have been suppressed by the trial court." The officers in this case simply had insufficient articulable facts to support an inference that an offense was taking place, had taken place or was about to take place. The majority points to Campbell's observation of a "bundle" or "bulge" at defendant's waistband, but there is no indication in the record that Campbell had any reason to believe that the "bundle" or "bulge" was a gun or contraband of any type. The majority also points out that defendant had his hands in his pockets, which, again, adds little if anything in support of a *Terry* stop. As to defendant's "evasive step," any attempt by a citizen to terminate a consensual encounter with the police is obviously "evasive" from the officer's viewpoint. Such an exercise of one's right to walk away, if the right is not illusory, should not in my view be considered in assessing the propriety of a *Terry* stop.

Here we have only the officer's testimony that he and his partner were suspicious of the defendant and his companions because they

were standing by an occupied car in a "high narcotics area" and "possibly *** could have had narcotics." This was simply insufficient, as a matter of law, to justify a stop. A police officer may not rely on "mere hunch and suspicion" to justify an intrusion into a citizen's right to move freely in our society. *People v. Moore*, 286 Ill. App. 3d 649, 654, 676 N.E.2d 700 (1997); *People v. Hunt*, 188 Ill. App. 3d 359, 362, 544 N.E.2d 118 (1989). I believe that the stop was improper and that the trial judge should have granted the defendant's motion to suppress. I, therefore, respectfully dissent.