THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARCO JACKSON, Defendant-Appellee.

First District (1st Division)   No. 1—07—2244

Opinion filed March 30, 2009.—Rehearing denied April 27, 2009.

GARCIA, J., dissenting.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Eve Reilly, and Greg Funfsinn, Assistant State's Attorneys, of counsel), for the People.

Edwin A. Burnette, Public Defender, of Chicago (Ronald D. Haze, Assistant Public Defender, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The only question before us is whether the handgun recovered by a police officer was lawfully seized. The trial court, after reconsideration, granted the defendant's motion to suppress the evidence. This is an appeal of that ruling by the State, as authorized by Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)). We affirm the trial court.

FACTS

On November 25, 2006, the defendant was arrested by Chicago

police officers and was charged with felony unlawful possession of a handgun.

The defendant filed a motion to quash his arrest and suppress the handgun (motion to suppress). The motion alleged the weapon had been seized in violation of the fourth amendment of the federal constitution and its state counterpart. A hearing on the motion was held on May 14, 2007. Chicago police officer Connor was the only witness to testify.

Called as a witness by the defense, Officer Connor testified that on November 25, 2006, he was patrolling the vicinity of 7114 South Ashland Avenue in Chicago. Officer Connor spotted the defendant, whom he had never seen before. The defendant was not committing a crime and Officer Connor did not have a warrant for his arrest. However, Officer Connor "[wound] up" recovering a loaded .32-caliber Smith & Wesson handgun "which [the defendant] dropped."

On cross-examination by the State, Officer Connor explained he was patrolling the vicinity of 7114 South Ashland because it was his "beat" and because there had been "numerous robberies in the area in the past." Officer Connor observed the defendant walking up and down the 7100 block of South Ashland for 40 minutes. Officer Connor, who was dressed in uniform, approached in his squad car, exited, and walked toward the defendant because of "the incidences of robberies in the area and [the defendant's] suspicious behavior." Officer Connor's testimony:

"Q. As you approached the defendant on foot, did you tell the defendant to do anything?

A. Yes, I did.

Q. What did you tell defendant to do?

A. I told him to remove his hands from his jacket pockets.

Q. Why did you tell the defendant to do that?

A. For my safety.

Q. How many times did you tell the defendant to remove his hands from his jacket pocket?

A. At least three to four times.

Q. What did the defendant do after the first time you told the defendant to remove his hands from his pockets?

A. He did not remove his hands.

Q. Did the defendant eventually remove his hands from his pocket[s]?

A. Yes, he did.

Q. What happened as the defendant removed his hands from his pockets?

A. He dropped one 32 caliber Smith and Wesson loaded five-shot revolver from his right hand to the ground.

Q. After the defendant dropped the handgun to the ground, what did the defendant do?

A. He turned away and fled on foot southbound."

Officer Connor recovered the handgun and radioed other officers to be on the lookout for the defendant. Soon thereafter, the defendant was apprehended a short distance away.

The defendant did not reexamine Officer Connor. The trial judge asked Officer Connor about his knowledge of the prior robberies. Officer Connor only recalled there had been "incidents of robberies in the area" and could not recall the robbers' descriptions. Officer Connor suspected the defendant may have been involved in the robberies because of his "suspicious behavior" in the way he walked up and down the block, looked in store windows, and "check[ed] out people." No further testimony was presented.

Defense counsel contended the motion should be granted because Officer Connor "had absolutely no reason to approach" the defendant and order him to remove his hands from his pockets. Counsel pointed to Officer Connor's lack of knowledge regarding the prior robberies. The State made no argument; it simply asked that the motion be denied: "Your Honor, we are asking that you deny the defendant's motion to quash arrest and suppress evidence."

In the course of denying the defendant's motion, the trial court found Officer Connor credible and that the case was "almost on all fours" with the United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The trial court concluded that because Officer Connor had information about robberies in the area and because the defendant's actions could be interpreted as "casing" potential robbery targets, Officer Connor approached the defendant to make an inquiry. Upon encountering the defendant, Officer Connor directed the defendant to remove his hands from his pockets for the officer's safety. During the encounter, the defendant dropped the gun. "At that point when he did make a drop while he wasn't complying with the officer's command, under the color of law[,] that's when the gun was found."

The defendant filed a motion to reconsider, claiming that no facts were articulated by Officer Connor to justify his encounter with the defendant. The trial judge agreed. In reconsidering and granting the defendant's motion to suppress, the trial judge explained that it "perhaps overapplied these facts to *Terry*." The judge concluded the defendant's actions could just as easily be construed as window shopping as casing potential targets, and because Officer Connor did not provide any specific information concerning the prior robberies, such as a description of the suspect's gender, race, age, height, or weight, it

was apparent Officer Connor "[j]ust wanted to check out Mr. Jackson for basically looking inside of windows."

The State filed a certificate of substantial impairment and this appeal followed.

## DECISION

The State contends no fourth amendment seizure occurred at the time the defendant dropped the handgun and thus his fourth amendment rights were not violated when he was subsequently arrested. The State makes no contention that when he approached the defendant, the officer had a reasonable and articulable suspicion of criminal activity to support an investigative detention pursuant to *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The trial court's ultimate decision that this was not a valid *Terry* stop goes unchallenged.

### Standard of Review

Our supreme court recently reiterated the two-part standard that applies to our review of a circuit court's ruling on a motion to suppress. As to the circuit court's findings of historical fact, " 'we will reverse those findings only if they are against the manifest weight of the evidence.' " *People v. Cosby*, 231 Ill. 2d 262, 271, 898 N.E.2d 603 (2008), quoting *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187 (2006). We review *de novo* the circuit court's ultimate legal ruling granting or denying the motion. *Cosby*, 231 Ill. 2d at 271.

### I. Defendant's Claim of Forfeiture

Initially, the defendant claims the State's challenge to the grant of his motion to suppress has been forfeited.

The defendant's claim of forfeiture is based on the State's failure to make any trial court argument concerning the legality of the seizure. The State simply asked that the defendant's motion to suppress be denied. The record reveals the State did not offer any specific reasons why the trial court should deny the defense motion. The State's failure to take a position is troubling; see *People v. Vasquez*, 388 Ill. App. 3d 532, 543 (2009), where, referring to the State's appeal of a suppression ruling, we said: "A party cannot make an argument for the first time on appeal."

We believe, however, the record is sufficient for us to consider the issues now raised by the State in this appeal.

### II. Seizure of the Defendant

The constitutional precepts are well known: the fourth amend-

ment of the federal constitution and its state counterpart protect people from unreasonable searches and seizures, including seizures of their persons. *People v. Thomas*, 198 Ill. 2d 103, 108, 759 N.E.2d 899 (2001). However, "not every encounter between the police and a private citizen results in a seizure." *Luedemann*, 222 Ill. 2d at 544. There are at least three tiers of police-citizen encounters: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, which must be supported by "a reasonable, articulable suspicion of criminal activity"; and (3) consensual encounters, which "involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544.

The defendant contends Officer Connor engaged in an unlawful investigative detention from the moment he approached the defendant and directed him to remove his hands from his pockets. The State, on the other hand, now contends the encounter between the defendant and Officer Connor was consensual. What separates these two opposing views is whether Officer Connor's conduct conveyed a "means of physical force or a show of authority, [such that the defendant's] freedom of movement [was] restrained." *Cosby*, 231 Ill. 2d at 273, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980).

Four factors listed in *Mendenhall* tend to support a finding of non-consensual seizure: (1) the threatening presence of several officers; (2) an officer's display of a weapon; (3) the physical touching of the individual's person; or (4) " 'the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Cosby*, 231 Ill. 2d at 274, quoting *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. While the totality of the circumstances must be examined to determine whether a seizure has occurred, the complete absence of the four *Mendenhall* factors negates a finding of a seizure. *Cosby*, 231 Ill. 2d at 281-82.

On the record before us, the first three *Mendenhall* factors are not present: (1) there was no threatening presence of several officers; Officer Connor was alone; (2) while Officer Connor was armed and in uniform, there is no testimony he displayed his weapon; and (3) there is no testimony that there was any physical contact between Officer Connor and the defendant. It is the fourth factor that supports the defendant's contention that a seizure occurred, although we have said "an officer wearing a police uniform may create an air of formality or may project greater authority than would an officer in plain clothes." *People v. Ocampo*, 377 Ill. App. 3d 150, 159, 879 N.E.2d 353 (2007). Officer Connor was in uniform when he approached the defendant; we presume he was carrying a visible holstered gun.

When Officer Connor approached the defendant the first thing he did was to tell the defendant to remove his hands from his pockets. It was not a question or a request. It was an order, and he repeated it three or four times. When the defendant finally obeyed the order, removing his hands from his pockets, the gun dropped to the ground. The remaining question in this case is whether defendant's removal of the gun from his coat pocket was the result of an unlawful seizure. If it was, we do not see how the fact that the defendant then "turned away and fled on foot" makes any difference. The seizure was complete at the moment Officer Connor first saw the gun.

We recognize that at the first hearing on defendant's motion the trial court said the defendant "wasn't complying with the officer's command, under the color of law," when the gun was found. That conclusion was not referred to by anyone when the trial court reconsidered the defendant's motion to suppress. By granting the motion, the trial court necessarily changed its view on whether the defendant was submitting to lawful authority when the gun dropped to the ground. At any rate, whether the defendant was submitting to authority at the critical moment in these undisputed events is a question of law, which we review *de novo*.

We find, in accord with the fourth *Mendenhall* factor, Officer Connor's use of language indicated "that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. When the defendant complied, a seizure took place. There was no legal basis for it.

We have held that when a police officer approached an individual and told him he " 'needed to talk' " with him, a reasonable person would interpret the statement as a command, not a request. *Ocampo*, 377 Ill. App. 3d at 160-61. That is, "[A] consensual encounter will lose its consensual nature if law enforcement officers convey a message, by means of physical force or show of authority, that induces the individual to cooperate." *People v. Gherna*, 203 Ill. 2d 165, 179, 784 N.E.2d 799 (2003).

In *People v. Smith*, 331 Ill. App. 3d 1049, 780 N.E.2d 707 (2002), we discussed the point at which a consensual encounter turns into an unlawful seizure. Although the defendant in *Smith* began to back away from the officers before he was told to stop and take his hands out of his pockets, we said that in other circumstances "we would find that a seizure occurred no later than when the defendant was told to stop and to remove his hands from his pockets." *Smith*, 331 Ill. App. 3d at 1053.

We believe that after the third or fourth command by Officer Connor, a "reasonable person would have believed that he was not free to

leave." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

CONCLUSION

We conclude the handgun possessed by the defendant was seized as a result of the defendant's submission to authority. Because we believe the seizure of the handgun violated the fourth amendment, we affirm the decision of the trial court to sustain the defendant's motion to suppress.

Affirmed.

R. GORDON, P.J., concurs.

JUSTICE GARCIA, dissenting:

I dissent for two reasons.

First, the defendant in his motion to reconsider presented a purely legal argument. Judge Linn in his initial decision ruled that the defendant's case was nearly "on all fours" with the *Terry* decision. In reconsidering and granting the defendant's motion to suppress, Judge Linn explained that he "perhaps overapplied these facts to *Terry*." Judge Linn concluded the defendant's actions could just as easily be construed as window shopping as casing potential targets, and because Officer Connor did not provide any specific information concerning the prior robberies, such as a description of the gender of the suspects, their race, age, height or weight, it was apparent that Officer Connor "[j]ust wanted to check out Mr. Jackson for basically looking inside of windows." In other words, based on the testimony, Officer Connor did not have reasonable suspicion to justify a *Terry* stop of the defendant.

In reconsidering his initial decision, Judge Linn did not reconsider the findings of fact he stated on the record pursuant to section 114—12(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—12(e) (West 2006) (order granting or denying a motion to suppress "shall state the findings of facts and conclusions of law upon which the order *** is based")); nor did the defendant seek to reopen the hearing to introduce additional evidence. The facts did not change, only the legal ruling changed. See *People v. Wear*, 371 Ill. App. 3d 517, 531, 867 N.E.2d 1027 (2007) (where the defendant "merely argued that the court erred in its application of existing law," "we will not presume that the court had an unsolicited change of mind about the facts"), *aff'd*, 229 Ill. 2d 545, 893 N.E.2d 631 (2008). Because Judge Linn made no factual findings upon reconsideration, it is clear that Judge Linn granted the motion to reconsider on the erroneous legal

conclusion that the encounter between the defendant and Officer Connor was an investigative detention, without reasonable suspicion, a position even the majority does not adopt.

Because a reasonable suspicion analysis does not apply to the encounter between the defendant and Officer Connor, the majority is compelled to modify the judge's ruling: "By granting the motion, the trial court necessarily changed its view on whether the defendant was submitting to lawful authority when the gun dropped to the ground." 389 Ill. App. 3d at 288. I find no basis for this determination for it pretends to read the mind of the trial judge. Logic does not favor this outcome and we have previously taken the opposite view: "[W]e infer that while adhering to its previous factual findings, the court agreed with the legal argument that defendant made in his motion for reconsideration, and granted the motion on that basis." *Wear*, 371 Ill. App. 3d at 531.

Judge Linn was clear on his findings of fact: Officer Connor was credible and, at the time the gun was dropped, the defendant "wasn't complying with the officer's command, under the color of law." His findings lead to but one conclusion: the defendant's fourth amendment rights were not implicated at the time of his encounter with Officer Connor because no seizure occurred. This was the precise holding in *Thomas*: no seizure occurs based on a verbal show of authority where " 'the subject does not yield.' " *Thomas*, 198 Ill. 2d at 111, quoting *California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697, 111 S. Ct. 1547, 1550 (1991).

Second, even accepting the majority's position that we may disregard Judge Linn's initial findings of fact and force our own interpretation upon the defendant's actions at the time he dropped the handgun, I cannot agree that an unlawful seizure of the handgun occurred when Officer Connor recovered the handgun from the ground. I submit that it makes all the difference in a fourth amendment analysis that at the time the handgun was recovered by Officer Connor, the defendant had already "turned away and fled on foot."

The majority's reliance on a sentence fragment from *Smith* as authority for the conclusion reached here is faulty. More completely, we held:

> "Under other circumstances we would find that a seizure occurred no later than when the defendant was told to stop and to remove his hands from his pockets. At that point the defendant had begun to back away from the officers, indicating his intent to leave. The officers just as clearly indicated their intent that he remain. *However, because the defendant did not submit to the officers' commands, but continued to back away, no seizure occurred at that point.*" (Emphasis added.) *Smith*, 331 Ill. App. 3d at 1053.

It is precisely that necessary element of compliance before a seizure can be found that is absent in this case. " 'The police may well convey a reasonable feeling of restraint, but that message does not amount to a seizure within the meaning of the fourth amendment until there is submission to it. A person must submit to a show of authority before that show of authority can constitute a seizure.' " (Emphasis omitted.) *Thomas*, 198 Ill. 2d at 112, quoting appellate court decision, *People v. Thomas*, 315 Ill. App. 3d 849, 857, 734 N.E.2d 1015 (2000), citing *Hodari D.*, 499 U.S. at 629, 113 L. Ed. 2d at 699, 111 S. Ct. at 1552. As in *Smith*, but far more emphatically here, the defendant made clear "his intent to leave." *Smith*, 331 Ill. App. 3d at 1053. Whatever notion of compliance may have been present triggered by Officer Connor's commands that the defendant remove his hands from his pockets dissipated with the defendant's flight.

The majority's holding that "[t]he seizure was complete at the moment Officer Connor first saw the gun" (389 Ill. App. 3d at 288) is unpersuasive. More than fleeting compliance is required. *Smith* and *People v. Billingslea*, 292 Ill. App. 3d 1026, 686 N.E.2d 603 (1997), instruct that an intent to comply must be present in the acts of the defendant. Any suggestion that there was such an intent present here is completely undermined by the defendant's flight. Compliance cannot be so momentary that the "seizing" officer has no time to react. Even if a scintilla of intent to comply may be discovered in the defendant's act of removing the handgun from his pocket, the overriding intent of the defendant made clear by his flight was to avoid arrest. Consistent with his aim to avoid arrest, the defendant dropped the handgun to distract the officer or at least delay his pursuit.

The majority's holding renders meaningless the submission requirement. Submission to authority is not subject to a microscopic view of an encounter to find compliance, precisely because any perceived compliance may dissipate just as quickly with the defendant's flight. That this is true is most persuasively illustrated by answering the majority's challenge that the defendant's flight makes no difference.

Had the defendant made good on his flight and not been arrested until hours later, his motion to quash arrest and suppress evidence would not lie. His arrest hours later would be supported by the probable cause established by the recovered handgun (*Billingslea*, 292 Ill. App. 3d at 1030-31 (officer's recovery of tossed gun provided probable cause for arrest that began as a *Terry* stop)); the recovered handgun would not be subject to a motion to suppress because the defendant abandoned all interest in the handgun when he dropped it (*People v. Novakowski*, 368 Ill. App. 3d 637, 641, 857 N.E.2d 816 (2006) (property

dropped to ground and left is considered abandoned, which is not subject to fourth amendment protection against unreasonable search and seizure)). That the defendant did not make good on his attempt to flee should not, in fact cannot, put him in a better position. His flight makes clear his intention not to submit to Officer Connor; absent submission there can be no seizure based solely on a verbal show of authority. *Thomas*, 198 Ill. 2d at 112, citing *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1550 ("The Court concluded that the fleeing Hodari was not seized until a police officer tackled him").

As in *Smith* and *Billingslea*, the defendant in this case was not seized for fourth amendment purposes at the time Officer Connor repeatedly directed the defendant to remove his hands from his pockets because the defendant, in dropping the handgun and fleeing, did not submit to the officer's verbal show of authority. The defendant was not seized until he was actually arrested by nearby assisting officers, by which time the handgun had been recovered. Because Officer Connor's recovery of the handgun did not result from a seizure of the defendant, Judge Linn's legal ruling granting the motion to suppress should be reversed.

I dissent.